SAMUEL J. BIXLER

*v.*

NELSON G. SUMMERFIELD *et al.*

195    147
113a  ¹428

*Opinion filed February 21, 1902.*

1. CORPORATIONS—*minority stockholder entitled to relief against misappropriation of corporate funds.* If members of one family holding the majority of the stock in a corporation vote away the corporate profits for salaries to themselves, a minority stockholder may come into equity for relief.

2. SAME—*causes which will authorize a court of equity to decree dissolution.* The causes which will authorize a court of equity to decree dissolution of a corporation under section 25 of the Chancery act, are the doing or committing of some act which subjects the corporation to a forfeiture of its charter.

3. SAME—*provisions of Incorporation act are part of charter.* If a corporation is organized under the general Incorporation act, provisions of the statute enter into and become a part of its charter.

4. SAME—*corporations are not allowed to hold real estate for investment.* Under section 5 of the general Incorporation act a corporation organized under the general law is forbidden to hold real estate except such as is necessary for corporate purposes.

5. SAME—*when Supreme Court may entertain appeal from decree dismissing bill against corporation.* If the allegations of a bill against a corporation are such that the result of the litigation may be a decree of dissolution, the Supreme Court will entertain an appeal from a decree dismissing the bill on demurrer.

APPEAL from the Circuit Court of Cook county; the Hon. R. S. TUTHILL, Judge, presiding.

WILLIAM HINDLEY, and ERNEST SEVERY, for appellant.

A. W. BRICKWOOD, for appellees.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The original bill in this case was filed by the appellant, Samuel J. Bixler, on January 9, 1901. To this original bill a general and special demurrer was filed, which was sustained. Thereupon, and afterwards on March 6,

1901, the appellant filed his amended bill against the appellees, Nelson G. Summerfield, and his wife, Lizzie Summerfield, and Sophia H. Hoff, and the Story Finishing Company, alleging the latter to be a corporation, existing under the laws of Illinois and organized on or about April 28, A. D. 1893, for the purpose, as set forth in its charter, of "carrying on the business of general finishers to the printing, lithographic and kindred trades." A general and special demurrer was filed to the amended bill.   This demurrer was sustained, and the court below dismissed the bill at the complainant's costs for want of equity, the appellant having elected to stand by his bill. From the decree of dismissal this appeal is prosecuted.

The bill is filed by the appellant as a minority stockholder in the Story Finishing Company, the corporation above named.   It appears from the allegations of the amended bill that, at the time of the incorporation of the Story Finishing Company, its capital stock was $15,-000.00, which was divided into 300 shares, each representing a face value of $50.00; that, subsequently and at the time of the filing of the original and amended bills herein, the appellee, Nelson G. Summerfield, owned and controlled 241 shares of the stock; that the appellant, Bixler, owned 58 shares thereof, and Sophia H. Hoff one share thereof.

The bill does not allege that the corporation is insolvent, but, on the contrary, states its assets to be $16,-196.33, and its liabilities, excluding capital stock, to be only $241.13.   Two classes of relief are sought by the bill, dependent upon two different classes of facts.

*First*—The bill charges generally that the appellee, Nelson G. Summerfield, has managed the business of the corporation in the interest of himself and his family, and has misapplied the assets of the corporation. It charges that in August, 1897, at the annual election of officers of the company, Nelson G. Summerfield, a director and owner of a majority of the stock, voted himself into the

offices of president and treasurer of the company, and that he has continued to hold such offices since that time. It furthermore charges that Summerfield made his sister, A. E. Summerfield, secretary of the company, though she was not one of the stockholders and had never owned any of its stock, and paid her three dollars per week as such secretary, notwithstanding the fact that the by-laws of the company did not provide a compensation for the secretary, and notwithstanding the fact that A. E. Summerfield never performed any actual work as such secretary beyond signing her name to certain letters of notification to the stockholders. It is also charged in the bill, that Summerfield paid to his wife from the funds of the corporation a salary of $25.00 per week for work, for which the wages had been, prior to the time of her employment, $3.50 per week, although his wife is alleged to have performed no services to the company for a period of nine months, during which she received such salary of $25.00 per week. It is charged that Summerfield thereby paid his wife illegally out of the company's money a sum sufficient for a seven per cent dividend on the company's stock. It is also charged in the bill, that Summerfield placed his own salary, as employe and president of the company, at $25.00 per week, and continued to pay himself such salary, without any deduction for loss of time or for vacations, until October, 1900, when he raised his salary, as such officer and employe, to $35.00 per week.

It is also charged in the bill that an arrangement was originally made with appellant, who was the book-keeper of the company, by the terms of which he was to receive a salary of $15.00 per week, but that his salary was reduced to $12.00 per week, and continued to remain at that figure against his protest. The bill also charges Summerfield with otherwise appropriating the money of the corporation to his own use without declaring dividends, and with lending the money of the company to himself, and to other parties, upon insufficient security.

Without specifying further the first class of allegations in the bill, it is sufficient to say that they amount to a charge, that the man, who owned the majority of the stock, and was director and president and treasurer of the company, wrongfully dealt with its property to the injury of the appellant as a minority stockholder.

So far as the first class of facts stated in the bill, which have thus been referred to, are concerned, it can not be said that the appellant, as a minority stockholder, was not entitled to relief. This being so, it was improper to sustain the demurrer to the bill.

In *Green* v. *Hedenberg*, 159 Ill. 489, we said (p. 493): "It is well settled in this State, that, where the officers of a corporation wrongfully deal with its property to the injury of stockholders, the latter may maintain a bill against the company and its officers for relief against such misappropriation." If, as is alleged in substance in the bill, the stock held by the appellant was impaired in value by a misappropriation of the corporate funds, there is no good reason why the appellant might not, as might any other stockholder, maintain his bill for relief. Such misconduct of the corporate officers may be no cause for a dissolution of the corporation at the suit of a minority stockholder. (*Waterbury* v. *Merchants' Union Express Co.* 50 Barb. 157; *Belmont* v. *Erie Railway Co.* 52 id. 637; 2 Cook on Corp.—4th ed.—sec. 629, note 5). But where the board of directors of a corporation "vote large pay to themselves, evidently in bad faith, and with a view to depriving the corporation of more than a reasonable proportion of its net earnings, a dissenting stockholder may file a bill in equity to have the amount recovered back." (2 Cook on Corp.—4th ed.—sec. 657, and cases cited in notes.) If one family, holding the majority of the stock of a corporation, vote away the corporate profits for salaries, the minority may call upon a court of equity to remedy the fraud. (Ibid.; *Sellers* v. *Phœnix Iron Co.* 13 Fed. Rep. 20).

If the allegations, thus made in regard to a misappropriation of the funds of the company, were the only allegations, upon which the prayer for relief is based, we should be inclined to dismiss the present appeal as having been improperly brought to this court. The prayer for relief in the original and amended bills, based upon the allegations already mentioned, is a prayer that the appellees be required to account to the appellant, and to the Story Finishing Company, for the amount received by them; that an accounting be taken of the transactions and doings of the president and treasurer of the company; that he and his wife be required to pay to the corporation such sum as may be found due from them on account of such misapplication of the company's funds; that Nelson G. Summerfield be enjoined from further illegal expenditures of the funds and assets of the company, etc. The appeal, if the case rested solely upon this part of the prayer for relief, should have been taken to the Appellate Court.

*Second*—But the bill further proceeds to set up and charge certain *ultra vires* acts on the part of the corporation, and Summerfield, as officer, and holder of the majority of the stock of the company. Based upon the second class of allegations having reference to these *ultra vires* acts, the further relief, prayed for by the bill, is that a receiver be appointed to take charge of the corporate books, books of account, assets and effects belonging to the Story Finishing Company, and to hold and dispose of the same, and that the corporation be dissolved and its assets be distributed to the parties entitled thereto.

Among the *ultra vires* acts, charged in the bill, is the use of the funds of the company by Summerfield, its treasurer, for the purchase of real estate in the name of the corporation from one John Summerfield, the brother of Nelson G. Summerfield. This purchase of real estate for an investment with the funds of the company is charged

in the bill to be "contrary to the laws of Illinois and the charter of said corporation."

We have held that, although it is no part of the general jurisdiction of a court of chancery to decree the dissolution of a corporation by forfeiture of its franchise, yet it is within the power of the legislature to confer such jurisdiction upon a court of equity by statute. Accordingly, under the 25th section of the Corporation act of this State, courts of equity are given full power to dissolve a corporation for "good cause shown." (*Chicago Mutual Life Indemnity Ass.* v. *Hunt*, 127 Ill. 257; *Hunt* v. *LeGrand Roller Skating Rink Co.* 143 id. 118). Section 25 of the Corporation act provides that "courts of equity shall have full power, on good cause shown, to dissolve or close up the business of any corporation," etc. (1 Starr & Curt. Ann. Stat.—2d ed.—p. 1011.) The causes, which will thus authorize courts of equity to decree the dissolution of a corporation and the closing up of its business, have been defined to be "the doing or refraining from doing some act which shall subject the corporation to a forfeiture of its charter or corporate power," etc. (*Wheeler* v. *Pullman Iron and Steel Co.* 143 Ill. 197; *People* v. *Weigley*, 155 id. 491). Where a corporation does an act, which its charter does not authorize it to do, or which its charter or a statute expressly prohibits it from doing, such an act may, under certain circumstances, subject the corporation to the penalty of a dissolution. (2 Cook on Corp.— 4th ed.—secs. 635, 667, 690, and cases referred to in notes).

The bill in this case alleges, that the Story Finishing Company is a corporation organized under the general Incorporation act of the State of Illinois. Where a corporation is formed under such general law, its charter does not consist of the articles of association alone, but of such articles taken in connection with the law, under which the organization is formed. That is to say, the provisions of the statute or general Incorporation act enter into and form a part of the charter. (*People ex rel.*

*v. Chicago Gas Trust Co.* 130 Ill. 268). When we turn to
the general Incorporation act of this State, we find it
provided in section 5 thereof, that "corporations formed
under this act   *   *   *.   may own, possess and enjoy so
much real and personal estate as shall be necessary for
the transaction of their business." (1 Starr & Curt. Ann.
Stat.—2d ed.—p. 992). Under this section of the Incor-
poration act corporations are forbidden to hold real es-
tate, except so far as it shall be necessary to do so for
the purposes of their business. They are not authorized
to hold real estate for purposes of investment.

In *People* v. *Pullman Car Co.* 175 Ill. 125, we said (p. 142):
"Irrespective of the operation of statutory restrictions,
it is a settled principle of American jurisprudence that
a corporation cannot take and hold land, except in so far
as reasonably necessary to carry out the objects of its
creation. These bodies, which never die, are not allowed,
against the objection of the State, to take and hold land
for purposes wholly foreign to the purposes, for which
the State endowed them with corporate existence, and
the power of perpetual succession.   *   *   *   This court
has declared that it is against the public policy of this
State to allow corporations to own real estate beyond
what is necessary for the transaction of their corporate
business, or such as is acquired in the collection of debts."

The allegation in the bill in this case, that funds of
the corporation have been used in the purchase of real
estate for the purposes of investment, and not necessary
to the business of the corporation, might, under a certain
state of facts, and accompanied by conclusive evidence,
authorize a court of chancery to exercise its statutory
power of dissolving the corporation and winding up its
business, as a portion of the relief asked for under the
first head above named. This being so, the demurrer to
the bill here should not have been sustained, inasmuch
as the allegations present a probable cause for a disso-
lution of the corporation. Where the allegations of the

bill are such that the result of the litigation may be a decree dissolving the corporation, it cannot be said that a franchise is not involved in such sense as to authorize an appeal directly to this court. (*St. Louis and Sandoval Coal and Mining Co.* v. *Edwards*, 103 Ill. 472; *Chicago Steel Works* v. *Illinois Steel Co.* 153 id. 9).

It is furthermore alleged in the bill that the Story Finishing Company has been forced by the appellee, Summerfield, into a kind of manufacturing business, which is not authorized by its charter, either expressly or impliedly. Undoubtedly, the powers of a corporation are those only, which are granted to it in its charter, or which are necessarily implied therefrom. (*People* v. *Pullman Car Co. supra*). "It is a tacit condition of a grant of incorporation that the grantees shall act up to the end or design for which they were incorporated; and hence, through neglect or abuse of its franchises, a corporation may forfeit its charter as for condition broken or for a breach of trust." (Angell and Ames on Corp.—11th ed.—sec. 774). In *Dodge* v. *Woolsey*, 18 How. 331, it is said: "It is not only illegal for a corporation to apply its capital to subjects not contemplated by its charter, but also to apply its profits." It is not necessary, however, to discuss the question, whether the manufacturing business, into which the Story Finishing Company is alleged to have been forced by the appellee, Summerfield, is or is not within the express or implied powers of its charter. What has already been said in regard to the misappropriation and misapplication of the corporate funds and in regard to the investment of the corporate funds in real estate is sufficient to show, that the bill should have been retained by the court below, and should not have been dismissed.

For the reasons above stated, the decree of the circuit court of Cook county, sustaining the demurrer and dismissing the bill, is reversed, and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*