SAMUEL J. BIXLER

*v.*

NELSON G. SUMMERFIELD *et al.*

*Opinion filed April 20, 1904—Rehearing denied June 8, 1904.*

CORPORATIONS—*what not ground for dissolution.* Alleged misman-
agement is not ground for the dissolution of a solvent corporation
at the suit of a minority stockholder, where the stock and assets
of the corporation have greatly increased in value under the man-
agement of defendant officers and the irregularities complained of
were corrected as soon as complainant made objection.

APPEAL from the Circuit Court of Cook county; the
Hon. R. S. TUTHILL, Judge, presiding.

WILLIAM HINDLEY, and ERNEST SEVERY, for appel-
lant.

A. W. BRICKWOOD, for appellees.

Mr. JUSTICE RICKS delivered the opinion of the court:

This suit was before us at a previous term, an appeal
being prosecuted by appellant from a decretal order dis-
missing the bill on demurrer thereto. The decree was
reversed and the cause remanded for further proceedings
in accordance with the views expressed in the former
opinion of this court, reported in 195 Ill. 147, to which
reference is made for a more complete statement of the
facts. In the former appeal the question presented was
whether the allegations of the bill set up a cause of
action sufficient to require an answer, the demurrer ad-
mitting the facts as alleged. The reversal by this court
established the fact of the bill's sufficiency, and now the
only question presented is whether the facts established
by the evidence sustain the allegations of the bill and
warrant the relief prayed for by complainant. The trial
court in the present case was of the opinion that the evi-
dence did not warrant the relief prayed, and entered a
decree dismissing the bill.

The main allegations in the bill are: First, that the company paid unreasonable and fraudulent sums for salaries; second, the loaning of the funds of the company, contrary to its charter; third, the adding to the business the manufacture of goods, against the provisions of its charter; and fourth, the purchase and holding of real estate, in violation of the statute.

The company, as organized, was known as the Story Finishing Company, and at the time of incorporation its capital stock was $15,000, which was divided into three hundred shares, each representing a face value of $50, and at the time of filing the amended bill the appellee Nelson G. Summerfield owned and controlled 241 shares of the stock, the appellant, Bixler, owned 58 shares and Sophia H. Hoff one share. There is no allegation in the bill that the corporation is insolvent, but, on the contrary, the assets are stated to be $16,196.33, and the liabilities, excepting capital stock, are stated to be $241.13. The company was organized in April, 1893, and at the time of its organization appellee Summerfield, John T. Story and the appellant appear to have been the organizers. Appellant, Bixler, was elected director and secretary, his duties being the keeping of the books of the company, and, when not engaged on the books of the company, doing other work, and for the services thus rendered he received the sum of $15 per week, and from 1896 to 1897 was president of the company. The evidence also discloses that he remained in the employ of the company until about the first of November, 1900, when he quit and established a business of his own similar to that of the Story Finishing Company, and in January, 1901, filed the bill in this case.

The first question being in reference to excessive salaries, the record discloses that appellant, as secretary, received $15 per week, John T. Story, one of the organizers, who was elected president, received $25 per week, and appellee N. G. Summerfield was elected vice-presi-

dent, treasurer and general manager, and received $25 per week. The salaries so remained until a meeting of the board of directors in August, 1895, when it became necessary, by reason of the company's financial embarrassment, to reduce the salaries, and a resolution of the board was adopted fixing appellant's salary at $12 per week and Summerfield's and Story's salaries at $5 per week for the term of eighteen months, or until the company's debts were paid. Shortly after this time Story quit the company, selling his interest to Summerfield, and at the election of officers in 1897 Summerfield, having control of a majority of the stock, elected himself president and general manager, fixing his salary at $25 per week, and elected A. E. Summerfield secretary, but it does not appear from the evidence that any salary was fixed for the secretary, but the evidence discloses that she received as wages from $3.50 to $7 per week, and that she worked in the factory the same as other employees. Appellant's salary remained the same until he quit working for the company. In October, 1900, the treasury showed considerable surplus, and the salary of the president, Summerfield, was fixed at $35 per week, and in December of the same year the board, by resolution, fixed his salary at $50 per week, which amount he was receiving at the time of filing the bill in this suit. The evidence discloses that Summerfield devoted his whole time and attention to the company's business, working early and late, and making no extra charges for overtime, and the book value of the stock has increased from $15 per share to $55 per share, and that the profits of the company for the year 1900 alone, in excess of all expenses, was $3400. From a review of the evidence we find there is a conflict as to what the services of appellee Summerfield were reasonably worth. Upon an average for the whole time from 1893 to 1900 the salary of Summerfield did not exceed $20 per week, and the fact that the stock had more than trebled in value would

seem to indicate that the management of the corporation was very skillful, and we are not prepared to say, under such circumstances, that the services of those in control and by whose management this state of affairs had been brought about, particularly Summerfield, were exorbitantly high.

It is also complained that Mrs. Summerfield, wife of N. G. Summerfield, was receiving $25 per week for the performance of work for which only from $3.50 to $5 per week had been allowed. The evidence, however, shows that Mrs. Summerfield took a very active interest in the business of the company and materially aided in building up and managing the business of the company, and as the witnesses differed as to what said services were reasonably worth, we cannot say that the amount paid for the same was manifestly too high.

It is next contended that appellee Summerfield made various loans out of the funds of the company, contrary to its charter; but the record discloses that all of such loans were for small sums, and that security was taken for same; that all were re-paid, with interest, and that at no time was there loaned to exceed $400; that all of said loans were made while appellant was an officer and in the employment of the company, and it was not until after appellant quit such employment that he made any objection to the loans thus made, and as soon as objection was made the company took steps to, and did, collect all the money loaned by it.

It is next contended that the company purchased a half acre of land in the suburbs of the city of Chicago, paying therefor the sum of $300, and held the title to the same for about two years, contrary to the statute. It is claimed by Summerfield that the purchase was made for a factory site. Whether this fact be regarded as established or not is wholly immaterial, for the undisputed evidence shows that as soon as complaint was made as to the holding of this property, a resolution was passed

by the board of directors authorizing the sale of said land, and the same was disposed of by the president of the company at a profit of $10.

It will thus be seen from the foregoing that the stock of the appellee company was not impaired in value by any misappropriation of the corporate funds, but it had been greatly enhanced by the management of those in its control. We think the evidence wholly fails to establish the allegations of complainant's bill, and the action of the circuit court in dismissing said bill was proper, and the same will be affirmed.    *Decree affirmed.*