### The Commercial Company of Alton, Appellee, v. William H. Sturges et al., Appellants.

1. CORPORATIONS, § 344*—*when plea of ultra vires may be interposed in a collateral proceeding.* Where a contract has been entered into by a corporation, a plea of *ultra vires* cannot be successfully interposed in a collateral proceeding based upon the same, where the corporation in such contract merely abused or exceeded the general powers conferred upon it by its charter; but where the law gives the corporation no authority whatever under its charter to do the acts sought to be done under the contract, then the doctrine of *ultra vires* may properly be raised in a collateral proceeding upon the contract.

2. CORPORATIONS, § 406*—*when defense of ultra vires may be raised in a suit for rent.* Where a corporation, organized for the purpose of conducting a business of a safe deposit or safe storage of valuable personal property, erected a large store and office building for the purpose of leasing the rooms and made no attempt to exercise the powers granted it, *held* in a suit by it against one of its tenants for rent that the defense of *ultra vires* could be raised.

Appeal from the Circuit Court of Madison county; the Hon. WILLIAM E. HADLEY, Judge, presiding. Heard in this court at the October term, 1913. Reversed and remanded with directions. Opinion filed May 1, 1914.

LEVI DAVIS, for appellants.

JOHN F. McGINNIS, for appellee.

*See Illinois Notes Digest, Vols. XI to XV and Cumulative Quarterly, same topic and section number.

MR. JUSTICE HIGBEE delivered the opinion of the court.

Appellee commenced this suit in the Circuit Court of Madison county on May 6, 1912, to recover two months' rent claimed to be due it from appellants, for the use of a storeroom. Appellee declared upon a written lease executed by it to appellants and attached a copy of the same to the declaration. The lease was dated July 2, 1907, was to commence August 1, 1907, and run for a term of five years. It provided for the payment of rent at the rate of $158.33⅓ per month, payable on the first day of each and every month during the continuance of the lease.

Appellants filed two special pleas to the declaration, averring that appellee was incorporated under the general act concerning corporations, on September 13, 1906, for the single object of pursuing the business of a safe deposit or safe storage of valuable personal property; that appellee purchased a lot in Alton and erected thereon a building covering the whole of the lot and being five stories high, with a basement; that the first story was divided into two storerooms, one of which, with a basement under it, is and has been ever since the erection of the building occupied by a tenant of appellee as a restaurant and confectionery; that the other storeroom, with a basement under it, are the premises mentioned in the declaration as having been leased to appellants; that the second story of the building has been and is occupied by a tenant of appellee for the purpose of conducting a carpet store; that the third, fourth and fifth stories of said building were each divided into twenty rooms for offices, many of which are rented and occupied by tenants of appellee for the purposes of their own business; that such of said offices as have not been rented by appellee are held by it for the purpose of renting or leasing the same for certain rates of rent fixed by it; that neither appellee nor any of said tenants have ever occupied or used in any way any part of said building

for the business of a safe deposit or safe storage for valuable personal property, nor has appellee ever occupied any part of said building for any purpose whatever nor does it now occupy any part of the same; that appellee never owned or occupied any other real estate than said lot and building and has never, either in said building or elsewhere, engaged in any business for which it was incorporated; that the only business appellee has ever carried on is the business of dealing in real estate, to wit, the holding of said lot and building as an investment and the leasing of the same to tenants as aforesaid and the receipt and acknowledgment of the rentals derived therefrom; that appellants quit and surrendered unto appellee possession of the storeroom and basement mentioned in the declaration on March 31, 1912, and have not had possession or use of the same since that date and that no portion of the rent sued for and mentioned in the declaration accrued prior to the date last above mentioned.

The second plea was substantially to the same effect as the first, though it was shorter in form and contained the additional statement that appellee acquired said lot and erected said building thereon not for the purposes for which appellee was incorporated but as an investment and for the purposes of leasing to tenants for the profits which could be realized therefrom. Appellee filed a general demurrer to said pleas which was sustained by the court and appellant elected to abide by their said pleas. The court thereupon entered judgment by default against appellants and proof was introduced by appellee showing that two months' rent was due it under the lease, and judgment was entered against appellants for the sum of $316.66⅔.

Appellants take the position that appellee, as a corporation under the laws of this State, had no legal authority to execute the lease in question and that its act in so doing was *ultra vires* and that the lease is therefore void and cannot be enforced, while appellee asserts that the act of the appellee corporation can-

not in this regard be attacked collaterally, but can only be questioned in a direct action by the State. Section 1 of the General Act of this State (J. & A. ¶ 2418) concerning corporations, prohibits the organization of corporations for the purpose of carrying on real estate brokerage. Section 5 of the same act (J. & A. ¶2422), however, authorizes corporations formed thereunder to "own, possess, and enjoy so much real and personal estate as shall be necessary for the transaction of their business and may sell and dispose of the same when not required for the uses of the corporation."

In the case of *People v. Shedd*, 241 Ill. 155, it is said: "Under the general incorporation law this court has decided that the General Assembly has declared by its legislation that the public policy of the State will not allow corporations to hold real estate beyond what is necessary for the business or specific corporate purpose of such corporation;" and again "from the time of the enactment of our general incorporation law it has been uniformly held that the acquiring and holding of real estate are not purposes for which a corporation may be organized."

The question is presented for our consideration whether a corporation organized for the purpose of carrying on the business of a safe deposit or safe storage for valuable personal property, which neglects for a period of nearly six years after its incorporation to enter upon the business for which it became incorporated, but on the contrary immediately after incorporation entered into a real estate business, that is purchased land and erected a large store and office building thereon and leased the same and collected rents therefrom, can enforce a contract of leasing against former tenants for the unexpired portion of a written lease, where the tenants have given up the premises for that part of the unexpired term for which rent is sought to be collected. In the case of *Rector v. Hartford Deposit Co.*, 190 Ill. 380, the company was organized for purposes similar to those for which appellee was or-

ganized. It proceeded to erect a fourteen-story building with eight stores on the ground floor and over one hundred suites of offices on the upper floors. The only safety deposit vaults operated by the company consisted of a small vault on the fourth floor of the building constructed in one end of one of the private offices used by the company for its officers and agents. The inside dimensions of the floor of the vault was five by six feet and it was eight feet high. It had within the vault two wooden boxes and fifty-two steel boxes but only twenty of them had ever been rented. The gross rent received from the building was $100,000 per year, while the earnings from the safety deposit vaults did not exceed $100 per year. It was held in that case that it was within the general scope of the express powers of the corporation to own and possess a building necessary for its proper and corporate purposes; that in planning and constructing such a building the company was not necessarily to be restricted to a building containing the precise number of rooms its then business might require and no more, but that the future probable growth and volume of its business might be considered and anticipated and a larger building might be erected than the immediate volume of business required, and the rooms not needed might be rented to others, provided such course should be taken in good faith and not as a mere evasion of the public law and policy of the State, relative to the ownership of real estate by corporations: that "in such state of case the question is whether the corporation has abused or excessively and unjustifiably used the power and authority granted it by the State to construct buildings and own real estate necessary for its corporate purposes." It was further said in that case that: "It has never been held in this State, or understood to be the law, that the question whether such power has been abused, could be raised and availed of in a defense in a proceeding wholly col-

lateral to the question of the right and power of the corporation in the premises.''

Appellee contends that the case above referred to presents substantially every question involved in the present case, and that its decision which affirmed the judgment of the Appellate Court, reversing a judgment against the deposit company in the court below, is conclusive authority sustaining the judgment in favor of appellee in this case. A careful examination of that case, however, indicates that the decision in favor of the deposit company there does not lead to the conclusion that appellee was entitled to recover in this case. The opinion in that case was devoted largely to a proposition of law presented to the trial court by the deposit company but refused by that court, which was as follows: ''The court holds as a proposition of law in the trial and decision of this case, that the plea of *ultra vires* may be successfully interposed in a collateral proceeding where the corporation is alleged to have performed an act which it was not, under any circumstances, authorized to perform, but that where the act is one which at most is but a mere abuse or excessive use of a general power conferred upon the corporation by its charter such plea cannot be successfully interposed, because the question of *ultra vires* can in such cases be raised only in a direct proceeding by the State to oust the corporation of its usurped powers.'' The Supreme Court held that this proposition presented correct legal doctrine and should have been held as correct, and it was for a failure to do so the judgment of the trial court was reversed.

In the case of the *People v. Pullman's Palace Car Co.*, 175 Ill. 125, it was held that a corporation had a right to erect a building for its own purposes and that in so doing it had a right to take into consideration its probable prospective requirements and look after and prepare for the future, and that there was no reason why such parts of the building as were not

required for present use for the accommodation of its business should remain vacant, but that the same might be lawfully rented to other persons. It was further held, however, that: "A corporation could not be permitted, under mere color and pretense of furnishing accommodations for the transaction of its own affairs, to construct houses or rooms for the purpose of renting the same, and engage in renting such houses or rooms as a business, if such pursuit was, as it here clearly is, beyond and distinct from that it was created to pursue and accomplish."

From the above authorities and other cases in our Supreme Court reports it would appear that where a contract has been entered into by a corporation, a plea of *ultra vires* cannot be successfully interposed in a collateral proceeding based upon the same, where the corporation in such contract merely abused or exceeded the general power conferred upon it by its charter, but that where the law gives the corporation no authority whatever under its charter to do the acts sought to be done under the contract, then the doctrine of *ultra vires* may properly be raised in a collateral proceeding upon the contract.

In the case of *National Home Building & Loan Assn. v. Home Sav. Bank,* 181 Ill. 35, it was held that the building association could not hold real estate except for the purpose of carrying on its legitimate business of collecting a debt, and the Court in its opinion stated: "The law on this subject is stated by the Supreme Court of the United States in *Central Trans. Co. v. Pullman Palace Car Co.,* 139 U. S. 24, as follows: 'The charter of a corporation, read in the light of any general laws which are applicable, is the measure of its powers, and the enumeration of these powers implies the exclusion of all others not fairly incidental.' * * * It is, and always has been, against the policy of the State to permit corporations to accumulate landed estates or to own real estate beyond what is necessary for their corporate business or such as is

acquired in the collection of debts.  *  *  *  In *Central Trans. Co. v. Pullman Palace Car Co., supra,* the result of the decisions as to the exercise of powers not granted is summed up, as follows: 'All contracts made by a corporation beyond the scope of those powers are unlawful and void, and no action can be maintained upon them in the courts.' "

In *Rector v. Hartford Deposit Co., supra,* the Court, in referring to the fact that the early decisions of the court were to the effect that the corporation having a general power to own real estate for corporate purposes may be required to answer to the State only for an alleged usurpation of that power, further says: "In later cases, notably *National Home Building & Loan Ass'n v. Savings Bank,* 181 Ill. 35, and *Best Brewing Co. v. Klassen,* 185 id. 37, the defense of *ultra vires* has been allowed to be collaterally maintained in cases where the *ultra vires* act of the corporation was wholly beyond and outside the general scope of its corporate powers, express or implied, and entirely foreign to the objects and purposes of its creation,—something which, under any and all circumstances, was beyond its power, either as expressed in the grant or as possessed by necessary implication."

In *Imperial Bldg. Co. v. Board of Trade,* 238 Ill. 100, where there is an extended and clear exposition of the authorities in reference to the subject, the statement is made: "It is not, and could not reasonably be, contended that under said general incorporation act a corporation can be organized for the purpose of purchasing and holding real estate. This act has often been before this court, and it has uniformly been held that acquiring and holding real estate are not purposes for which a corporation may be organized but that the organization of corporations for such purposes is forbidden by the statute. (*Bixler v. Summerfield,* 195 Ill. 147; *People v. Pullman Palace Car Co.,* 175 id. 125; *Carroll v. City of East St. Louis,* 67 id. 568; *First M. E. Church v. Dixon,* 178 id. 260.) Authority is given

corporations organized for legitimate purposes, not prohibited by law, to acquire and hold such real estate as may be necessary for the transaction of the business of the corporation, but beyond this, corporations, no matter for what purpose organized, are forbidden to hold real estate, but are required by the statute referred to, to sell the same within five years or be proceeded against by the State's attorney by information.'' In that case the object for which the corporation was formed was to lease property for a term not to exceed ninety-nine years, for the purpose of erecting thereon a building for the accommodation of tenants, to make the leases, collect rents and do all things incident to the management of said property.  A suit was brought by the building company to recover rent upon a lease and it was held by the court that the legal existence or right of the building company to organize for said purpose, under our general incorporation act, could be properly raised in that proceeding.  It follows from what is above said that if the Commercial Company of Alton, appellee herein, had sought to organize for the purpose of erecting the building in question and renting the same and collecting and enjoying the rents therefrom, such charter would have been refused or, if granted, would have been void and the question of its corporate existence or right to make the contract in question could be properly raised in such case.  It was, however, organized for a different purpose,— that of conducting the business of a safe deposit or safe storage of valuable personal property.  It has never attempted to exercise the powers granted to it, but has sought to exercise powers which, under the law, could not be granted to it by a charter from the State. It likewise follows that it had no authority to carry on the business in which it was engaged or to execute the contract sued on here and that its right to do those things may be rightfully raised by proper pleas in this case.  The pleas presented by appellant properly presented the question of appellee's right to maintain this

suit, and the court erred in sustaining the demurrer to them.

The judgment in this case will be reversed and the cause remanded with directions to the court below to overrule the demurrers to the special pleas.

*Reversed and remanded with directions.*