(No. 30392.—

SOPHIE MARNIK *et al.*, Appellants, *vs.* NORTHWESTERN PACKING Co. *et al.*, Appellees.

*Opinion filed March 18, 1948—Rehearing denied May 13, 1948.*

HENRY S. BLUM, and EDWARD M. KEATING, both of Chicago, for appellants.

IMMENHAUSEN, BANOVITZ & BALIN, and WILSON & McILVAINE, both of Chicago, for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

The sole question presented by this appeal requiring consideration is whether a franchise is involved, within the contemplation of section 75 of the Civil Practice Act. Ill. Rev. Stat. 1947, chap. 110, par. 199.

From the pleadings and the evidence it appears that, prior to 1920, Anthony Marnik and Joseph Cyze were engaged, as equal partners, in the business of manufacturing, buying and selling meat products. In February,

1920, Marnik and Cyze organized the Northwestern Packing Co. with a capitalization of $70,000, represented by 700 shares of common stock having a par value of $100 per share. Marnik and Cyze each subscribed and paid for 175 shares. Thereafter, Marnik and Cyze and their immediate families each acquired an additional 175 shares so that, by August, 1941, Marnik and the members of his family owned and controlled 350 shares of the capital stock and Cyze and members of his immediate family also owned and controlled 350 shares. Anthony Marnik died on August 21, 1941, leaving as his only heirs-at-law, his wife, Sophie, and their children, Jean, Anton and Raymond. On the day named, Sophie Marnik, individually owned 250 shares, 99 shares were registered in the name of Anthony Marnik, and one share in the name of a nominee. Sophie Marnik also owned first mortgage bonds or notes issued by Northwestern Packing Co. having a par value of $25,000. In September, 1941, pursuant to an order of the probate court of Cook County, Sophie Marnik, as administratrix of her husband's estate, sold 99 shares to Cyze for $3000. At this time, Mrs. Marnik sold her own 250 shares to Cyze for $7000, and, in October, 1942, she sold the notes to him for $13,000.

On January 21, 1944, the plaintiffs, Sophie, Jean, Anton and Raymond Marnik, brought an action in the superior court of Cook County against the defendants, Northwestern Packing Co., Joseph Cyze, his wife, Verney, his brother, Adam, and Louis V. Zralek. By their complaint, plaintiffs alleged that, for fifteen years prior to Marnik's death, the two families were, in a commercial and business sense, on terms of intimacy, trust and confidence and that, in particular, a fiduciary relationship obtained between Sophie Marnik and Joseph Cyze; that, for several months prior to Marnik's death, Cyze and others, in violation of the trust and confidence of plaintiffs and, particularly, of plaintiff Sophie Marnik, by deceit and trickery, contrived and con-

spired to procure for Cyze's benefit all the shares of North-western Packing Co. owned by Marnik at the time of his death and, also, the notes and shares owned by Sophie Marnik; that, from the date of its organization to August 21, 1941, the company's business prospered and flourished with but minor and insignificant interruptions and, on the day Marnik died and thereafter to the day the complaint was filed, the shares were worth a minimum of $200 each, and that the sales of the shares owned by plaintiffs were induced by false representations on the part of Cyze with respect to the financial condition of the corporation. Plaintiffs offered to return to Cyze the full purchase price, together with interest, received in payment of the notes and shares of stock sold to him. The relief sought was a decree rescinding the several sales of notes and shares of stock described and adjudging plaintiffs the equitable owners of the corporate shares. Joseph Cyze answered the complaint, denying its material allegations. His answer was adopted by Verney and Adam Cyze. Louis Zralek who filed a separate answer was later dismissed as a party defendant. The cause was referred to a master in chancery on April 21, 1944.

Thereafter, on July 5, 1944, plaintiffs were granted leave to amend their complaint. The gist of the paragraphs added to the complaint is that Cyze withdrew corporate funds in excess of $30,000 for his own private purposes; that these loans and withdrawals were *ultra vires*, fraudulent, without plaintiffs' consent and injurious to them as shareholders, and that, in excess of $19,000 of the $23,000 paid to plaintiffs for their shares of stock and notes of the company was unlawfully and fraudulently borrowed or otherwise acquired by Cyze from the corporation; that the loans to the extent of $23,000 are shown by the corporate records to be still outstanding and due from Cyze, and that these acts and omissions, among others described, on the part of Cyze, constitute waste of the corporate

funds, gross mismanagement and wilful and wanton fraud as against the corporation and the plaintiffs. The prayer of the original complaint was amended by adding, among other paragraphs, one asking the appointment of a liquidating receiver for the Northwestern Packing Co., conformably to the provisions of paragraphs 86 and 87 of section 157 of the Business Corporation Act. Ill. Rev. Stat. 1947, chap. 32, sec. 157.86, 87.

After an extended hearing, the master in chancery made his report finding that, on August 21, 1941, Anthony Marnik and his family owned and controlled 350 shares of stock of Northwestern Packing Co. and that Joseph Cyze and his family likewise owned and controlled 350 shares; that plaintiffs failed to prove by a preponderance of the evidence their allegations (1) that the business of the corporation prospered, (2) that, on the day Anthony Marnik died, the stock was worth a minimum of $200 a share, (3) that a fiduciary relationship, based upon intimacy between the families, existed, and (4) that Sophie Marnik sold the bonds relying upon any representation of Cyze. The master recommended that the complaint, as amended, be dismissed for the want of equity. Plaintiffs' objections to the report were overruled and allowed to stand as exceptions. The decree of the superior court overruled the exceptions and dismissed the complaint and amendment thereto for want of equity. This appeal followed.

The term "franchise," as employed in the statute authorizing direct appeals to this court, refers to a special privilege conferred upon an individual or corporation by the government, which does not apply to citizens generally by common right. (*People ex rel. Groff* v. *Board of Education,* 383 Ill. 166.) In *Chicago City Railway Co.* v. *People ex rel. Story,* 73 Ill. 541, this court observed, "A franchise, according to the definition given by Blackstone, is a royal privilege, or branch of the king's prerogative, subsisting in the hands of the subject, and, being derived

from the crown, must arise from the king's grant. (2 Blackstone, 17.) Corporate franchises in the American States emanate from the government, or the sovereign power, owe their existence to a grant, or, as at common law, to prescription, which presupposes a grant, and are vested in individuals or a body politic." See: *People ex rel. Potts* v. *Continental Beneficial Ass'n,* 280 Ill. 113; *Wilmington Water Power Co.* v. *Evans,* 166 Ill. 548; *Board of Trade* v. *People ex rel. Sturges,* 91 Ill. 80.

To authorize a direct appeal to the Supreme Court on the ground that the franchise of a corporation is involved, there must be a question as to the validity or existence of the corporation or franchise, and not merely a question as to what construction shall be placed upon the charter of the corporation. (*Wennersten* v. *Sanitary District,* 274 Ill. 189; *Rostad* v. *Chicago, Suburban Water and Light Co.* 211 Ill. 248.) The privilege or right to be a corporation is a franchise, and where the judgment must determine whether the franchise exists, the franchise is necessarily involved in the litigation. (*People* v. *O'Hair,* 128 Ill. 20.) Where the complaint does not seek a dissolution of a corporation, conformably to statutory authority, and the decree assailed does not direct a dissolution, a franchise is not involved. *Klein* v. *Independent Brewing Ass'n,* 231 Ill. 594; *Chicago Steel Works* v. *Illinois Steel Co.* 153 Ill. 9.

The action in *Chicago Steel Works* v. *Illinois Steel Co.* 153 Ill. 9, was instituted under section 25 of the Corporation Act then in force. The bill of complaint charged that the defendant, the Illinois Steel Company, had abandoned the objects for which it was created; that it had ceased doing business, leaving its debts to complainant and others unpaid, and that it was insolvent. Complainant also alleged fraud and mismanagement of the corporate affairs of the defendant by its directors, officers and shareholders, extending from 1873 to 1893, and charged per-

sonal liability against the shareholders and directors. The relief sought was the appointment of a receiver of the corporate property and assets, dissolution of the corporation, distribution of its property and assets among those lawfully entitled thereto, an accounting between it and its debtors, a decree of personal liability against the directors for the debts of the corporation and against the shareholders for "the amount unpaid and unsatisfied upon their capital stock thereof in such amounts as are necessary," and an injunction against conveying the corporate property or creating liens thereon, or giving preference to any creditor. An order was entered appointing a receiver, with full power and authority to close up the corporate affairs, with all due and convenient speed. A motion was made in this court to dismiss the writ of error upon the grounds that the order was not a final order and that no franchise was involved. The court said, "It is true, that the bill in the case at bar not only prays for a receiver, and for a distribution of the assets, and for an account, and for a decree against the stockholders for the amounts unpaid on their capital stock, and for an injunction, etc., but also for a dissolution of the defendant corporation. But the order entered on September 7, 1893, appointing a receiver, does not decree or direct that the corporation be dissolved. If a decree dissolving a corporation under said section 25 be regarded as involving a franchise, no such decree is shown to have been entered here. * * * A bill in chancery may, as does the bill in this case, ask for two kinds of relief, the granting of one of which may involve a franchise, while the granting of the other does not involve a franchise. If the decree entered grants the relief involving a franchise, it may be reviewed in this Court; but if the decree entered grants the other species of relief prayed for, which does not involve a franchise, it is not subject to review here. * * * Here, the question affected by the order of September 7, 1893, is not one which, in any sense,

involves a franchise, and therefore the order is not reviewable here."

In *Coquard* v. *National Linseed Oil Co.* 171 Ill. 480, the plaintiff, Coquard, filed his amended bill against the defendant corporation seeking a complete discovery of its affairs and condition; praying that it and its officers be enjoined from interfering with him in the exercise of his right to examine the corporate records, and from negotiating a proposed loan, or declaring or paying any further dividends, and from paying any further sums as compensation to endorsers for signing its paper, and asking that a receiver be appointed and the corporation wound up and its assets distributed according to law. A demurrer to the bill was sustained and the bill dismissed. Upon appeal, the Appellate Court affirmed the decree. The ground for asking that the corporation be dissolved and its assets distributed was that it constituted a trust formed in violation of law and that it was not doing a lawful business. This court held that plaintiff did not bring himself within any provision of the applicable section of the Corporation Act and, consequently, was not entitled to the appointment of a receiver or dissolution of the corporation. A franchise was not involved within the meaning of the applicable provision of the Practice Act.

In *People ex rel. Palmer* v. *Peoria Life Ins. Co.* 357 Ill. 486, the relief sought by plaintiff was the appointment of a receiver and an order dissolving the corporation. The insurance company consented to the entry of the orders prayed and a decree was entered accordingly. A franchise was involved, namely, the corporate existence of the Peoria Life Insurance Company and this court entertained jurisdiction of a direct appeal.

For another illustrative case where a franchise was directly involved so as to authorize a direct appeal to the court, see: *St. Louis and Sandoval Coal and Mining Co.* v. *Edwards,* 103 Ill. 472. A fact situation resulting in

an appeal being properly taken to the Appellate Court is presented in *Wiedoeft* v. *Frank Holton and Co.* 296 Ill. App. 118.

Upon review, the question of jurisdiction must be determined by the issues affected by the decree. (*Ryan* v. *City of Chicago,* 363 Ill. 607.) This salutary rule is applicable where a direct appeal is sought upon the ground that the constitutional validity of a statute or the construction of the constitution is involved, (*Economy Dairy Co.* v. *Kerner,* 371 Ill. 261,) where it is charged that a freehold is involved, (*Horner* v. *County of Winnebago,* 396 Ill. 382,) and, likewise, where, as here, an appeal is prosecuted upon the theory that a franchise is involved. *Chicago Steel Works* v. *Illinois Steel Co.* 153 Ill. 9.

Plaintiffs place reliance, however, upon *Bixler* v. *Summerfield,* 195 Ill. 147. Plaintiff, a minority shareholder of the Story Finishing Company, a domestic corporation, charged that Summerfield who owned a majority of the shares of stock had managed the business of the company in the interest of himself and his family, and had misapplied the assets of the corporation, and alleged, further, certain *ultra vires* acts on the part of the corporation and Summerfield, as an officer, in using the funds of the company for the purchase of real estate in the name of the corporation from Summerfield's brother. This investment of corporate funds was charged to be "contrary to the laws of Illinois and the charter of said corporation." Based upon the second group of allegations, complainant asked that a receiver be appointed to take charge of the corporate books, books of accounts, assets and effects, and to hold and dispose of them, and that the corporation be dissolved and its assets distributed to the parties entitled thereto. A general and special demurrer to the amended complaint was sustained, and complainant's pleading dismissed for the want of equity. Under the Corporation Act then in force, corporations were forbidden to hold real estate,

except so far as necessary for the purposes of their business. This being so, the court observed that the allegation to the effect corporate funds had been used in the purchase of real estate for the purposes of investment, and not necessary to the business of the corporation, might, under a certain set of facts, and accompanied by conclusive evidence, authorize a court of chancery to exercise its statutory power of dissolving the corporation and winding up its business, as a portion of the relief sought. The court said that the allegations presented a probable cause for a dissolution of the corporation, adding, "Where the allegations of the bill are such that the result of the litigation may be a decree dissolving the corporation, it cannot be said that a franchise is not involved in such sense as to authorize an appeal directly to this court." *Bixler* v. *Summerfield* must be limited to the factual situation presented, namely, the charge of *ultra vires* acts affording ample authority for dissolution of the corporation.

In the present case, the amendment to the complaint, to the extent it seeks the appointment of a liquidating receiver, pursuant to sections 86 and 87 of the Business Corporation Act, is an afterthought representing an attempt to find a basis for a direct appeal to this court. The principal errors relied upon by plaintiffs for a reversal are that the chancellor should have held that the Northwestern Packing Co. was a partnership in corporate form; that Joseph Cyze was a fiduciary for each of the plaintiffs, growing out of their personal and business relationship; that Cyze bore a fiduciary relationship to Sophie Marnik growing out of the fact he was the surviving partner of her deceased husband; that the burden of proof rested upon Cyze to show the challenged transactions were fair and equitable, the price adequate, and that Sophie Marnik acted with full knowledge and understanding of these transactions; that plaintiffs were entitled to rescind the sale of the bonds and stock sold by Sophie Marnik, indi-

vidually and as administratrix, to Cyze, and that a rescission should have been decreed and the stock and bonds restored to plaintiffs upon equitable terms. Of the fourteen errors assigned, the foregoing represent the contentions actually made and argued. It is true that two of the errors assigned are that the trial court erred in not appointing a liquidating receiver for Northwestern Packing Co. and in not holding the evidence established a deadlock in the management of the corporate affairs, and gross mismanagement of the corporate assets by Cyze, and their conversion to his own and his family's use. In their principal brief of 133 pages, plaintiffs set·forth the substance of paragraphs 86 and 87 of section 157 of the Business Corporation Act and refer to *Bixler* v. *Summerfield,* 195 Ill. 147, as authority for a direct appeal from a decree dismissing a complaint of a shareholder to wind up the affairs of and dissolve a corporation on the ground that *ultra vires* acts to the corporate property were committed by the managing director. As observed, plaintiff in *Bixler* v. *Summerfield* alleged that Summerfield, acting for and in behalf of the corporation, had purchased real property for investment purposes, contrary to the statute and to the public policy of the State, thereby charging, without question, adequate ground, if proved, for dissolution of the corporation. *Bixler* v. *Summerfield* is not authority for the general proposition that a direct appeal lies to this court upon the ground a franchise is involved where a decree can grant adequate relief to a shareholder without ordering a dissolution of the corporation and where the decree dismissing the complaint contains no finding upon the issue of dissolving the corporation. *Chicago Steel Works* v. *Illinois Steel Co.* 153 Ill. 9.

Here, plaintiffs do not argue, in their extended brief, that a dissolution of Northwestern Packing Co. should have been decreed. The master in chancery to whom the cause was referred made no finding with respect to this

question. The decree is silent in this regard and the issue, for all practical purposes, has been abandoned by plaintiffs upon this appeal, except for the limited purpose of urging the amendment to their complaint as a basis for a direct review. We must observe that, in their brief and upon oral argument at the bar of this court, plaintiffs repeatedly asserted that Northwestern Packing Co. is a partnership in corporate form. Both their briefs and their oral argument make abundantly clear that the relief desired and which, if granted, will be entirely acceptable to plaintiffs, is a rescission of the sales of their stock and bonds upon the return of the purchase price by them to Cyze. Indeed, if plaintiffs prevail upon appeal, a dissolution of the corporation could not be ordered, in the absence of a ruling upon this issue by the trial court, and a remandment of the cause would become necessary for determination of the propriety of an order of dissolution. On the other hand, if the decree be affirmed, it is manifest that a franchise is not involved.

We are of the opinion that a franchise is not involved so as to vest this court with jurisdiction of a direct appeal, and the cause is transferred to the Appellate Court for the First District.

*Cause transferred.*