William C. Green

*v.* ·

John W. Hedenberg.

*Filed at Ottawa January 20, 1896.*

1. CORPORATIONS—*when stockholders may maintain bill for relief, against officers.* Where officers of a corporation deal wrongfully with its property to the injury of stockholders, the latter may maintain a bill against the company and its officers for relief.

2. SAME—*when demand on officers to bring action is not necessary.* Where there is a reasonable certainty that a demand upon the officers of a corporation to bring action would be unavailing, the stockholders may proceed without such demand.

3. SAME—*pledgee of shares of stock may maintain bill.* A pledgee, as collateral security, of shares of stock in a corporation may, as any other stockholder, maintain a bill against the company and its officers for relief against a misappropriation of the corporate funds, by which his security is impaired.

4. PARTIES—*dismissal of part of defendants—relief against those remaining.* Dismissal of part of defendants, upon a settlement with them, will not prevent relief against others not so connected with those dismissed that the latter continue to be necessary parties to the final decree.

*Green* v. *Hedenberg,* 55 Ill. App. 425, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. O. H. HORTON, Judge, presiding.

FRENCH, TELLER & BROWN, for appellant.

EDGAR B. TOLMAN, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This is a bill in chancery by appellee, as a stockholder, against the Nutting Electric Manufacturing Company and its officers and directors, charging them with misappropriation of corporate funds to his prejudice, and praying relief. The decree of the circuit court was according to the prayer of the bill, and has been affirmed by the Appellate Court.

The material facts set up in the bill are, that the capital stock of the corporation, consisting of 1000 shares of $100 each, were on April 13, 1893, held by two rival factions,—complainant, his son, James W. Hedenberg, and his son-in-law, Jason R. Prindle, being the owners of 536 shares, and William H. Foulke, Samuel E. Nutting, Frank A. Smith, S. D. Brown and Nellie C. Bonner the owners of the remaining 464 shares. At that time the last named parties, with W. C. Green, A. S. Nutting, A. W. Bonner, P. L. Taylor and D. B. Switzer, through complainant, acting for himself and his son-in-law, purchased all the shares owned by the parties first named, agreeing to pay therefor $40,000,—$15,000 in cash and $25,000 in notes, secured by the stock so purchased and 214 additional shares delivered to him as collateral. Upon the consummation of this sale, complainant, who was then president, and his son-in-law, Prindle, who was then secretary of the company, resigned, and appellant, W. C. Green, was elected president and W. H. Foulke secretary. Two others of the purchasers were made directors. Frank A. Smith was then treasurer, and continued to be an officer

of the company. At this time there was due the company certain insurance money, amounting to $15,200, and it is alleged in the bill that that money was afterwards wrongfully applied by the president, Green, and the treasurer, Smith, with the consent and concurrence of the other directors, upon the purchase price of said 536 shares of stock. The bill alleges that the total cash assets of the company at that time were $21,648.43, other personal property $3000, and patents of great value, but does not state their value. It is further alleged that on November 3 following the purchase of the stock from complainant, $50,000 in bonds were issued by the officers and directors of the company, secured by a chattel mortgage, in which Eugene Clifford was named as trustee, for the purpose of raising funds to pay a debt of $6600 pretended to be due and owing by the company, and it is alleged that if the $15,200 had not been misappropriated as stated, no necessity whatever would have existed for the issue of the bonds, even though the indebtedness really existed. It charges certain fraudulent transactions in regard to those bonds by Clifford, William H. Pope and A. Emma Smith, wife of Frank A. Smith, and these parties were made defendants to the bill. They answered denying its allegations as to them.

The company, Samuel E. Nutting, W. H., Foulke, P. L. Taylor, W. C, Green, Frank A. Smith and A. W. Bonner filed a joint and several answer, in which they admit the ownership and purchase of the shares of stock on April 13, 1894, substantially as alleged, but aver that the said purchase was in fact by the company, and not by the individuals in whose names the transaction was had; "they admit the $15,200 paid to complainant for the stock purchased was taken from the funds of the company by said Green, acting as president, and William H. Foulke, acting as treasurer, * * * and admit that the money was taken with the concurrence and assent of the board of directors; aver that it was also taken with the consent

and concurrence and at the request of every one of the stockholders, and with the full knowledge and consent of complainant, James W. Hedenberg, and Prindle;   *   *   * they admit that if the $15,200 had been in the treasury there would have been no necessity to issue the bonds or make the assignment of patents, but deny that there was any misapplication or misappropriation of the funds of the company, and deny that the bonds, mortgage or assignment of patents were made pursuant to any fraudulent scheme or plan to depreciate the stock or wreck the company, or for any other fraudulent or unlawful purpose, and aver that the same were made to raise money for the legitimate use of the company and for no other purpose, and they admit that the officers and directors hypothecated all of said bonds referred to, with the Central Trust Bank, as security for a debt owing said bank of $6524.50, but deny that it was done pursuant to any unlawful or fraudulent scheme or conspiracy of any kind, and aver that it was necessary for the company to raise money to that extent for its use, and that they had no other security to offer; they admit that if the money had not been taken from the assets no occasion would have arisen to pledge the bonds, but aver that the money taken and paid to complainant and his associates was taken with their concurrence and consent and for their use and benefit, and not for the benefit of the other stockholders, and complainant ought to be estopped from in any way questioning the validity or rightfulness of the transaction;" they admit the assets of the company to be substantially as alleged in the bill, and say "that the value of the stock is mainly speculative, resting upon the value of certain patents owned by the company." Other allegations appear in the bill, and the answer sets up many facts not here referred to, which, in our view of the case, are not of controlling importance.

The cause was referred to the master to take and report the testimony, with his conclusions, and he reported,

among other things, his finding to be that the purchase
of the 536 shares of stock was in fact made for the com-
pany, and he also found that the appropriation of the
$15,200 to the cash payment therefor was with the con-
sent of complainant and those for whom he acted.  His
report, which was very voluminous, was excepted to by
the complainant, which exceptions the master overruled,
but on their being renewed before the court were sus-
tained, the court holding that the evidence showed that
the purchase of stock was made by the individual stock-
holders purporting to buy the same, and not by the com-
pany, and also overruling the master's finding as to the
consent of the sellers of that stock that the company's
money might be used in the payment of $15,200 on said
purchase, and rendered a decree requiring the stockhold-
ers named to pay back into the treasury of the company
the $15,200 according to the *pro rata* amount due for the
shares of stock they received, and further providing that
the treasurer report to the court, within thirty days there-
after, the amount received from those parties, and order-
ing that W. C. Green, Frank A. Smith, and other officers
named, pay to the treasurer any deficit which might ap-
pear from his report, in the full repayment of said money,
—that is to say, $15,200.  It finds that the complainant
is the owner of certain shares of stock in said company.
From that decree William C. Green alone appeals.

The vital question in the case is admitted by all par-
ties to be, whether or not the complainant consented to
the appropriation of the insurance money to the cash
payment made him.  Other matters, however, are alluded
to by appellant as grounds of reversal, though they are
not pressed with much earnestness.

It is well settled in this State, that where the officers
of a corporation wrongfully deal with its property to
the injury of stockholders, the latter may maintain a bill
against the company and its officers for relief against
such misappropriation.  The general rule is, that before

bringing such a bill a demand must be made upon the proper officers of the corporation to bring the action, but where there is a reasonable certainty that such a demand would be unavailing it need not be made, and it is both alleged in the bill and admitted in the answer that a demand in this case would not have been regarded. It is true, in this case complainant was only a stockholder by reason of his holding the 750 shares of stock as collateral security; but if, as alleged, that security was impaired by a misappropriation of the corporate funds, we see no reason, and none is even attempted to be shown, why he might not, as any other stockholder, maintain the bill. *Baldwin* v. *Canfield,* 26 Minn. 43, is in point. The claim set up in the answer that the purchase of stock was by the company is refuted by the transaction itself, it appearing to be a purchase and sale by stockholders of the company, and not by the company. It also appears that by the subsequent transactions of the corporation such individuals were treated as purchasers of this stock, and required to pay into the treasury of the company each his *pro rata* share of the $15,200. We think the circuit court was clearly justifiable in finding that this was not a purchase of stock by the corporation.

The more difficult question of fact in the case is, as before stated, whether or not the complainant and those for whom he acted knew that the cash payment was to be made with the insurance money due the company, and consented thereto. We have carefully examined the testimony relied upon by appellant as proving such consent, and find it largely, if not altogether, of a negative character. That is to say, appellant relies upon proof of the fact that complainant was silent when appellant and other parties stated positively that the insurance money should be used in making the cash payment, and it is said these statements were repeatedly made in his presence and no objection whatever urged by him. No witness testifies that complainant ever expressly consented

to such use of the company's funds. It is in evidence that his son-in-law, Prindle, reported to one or more of the officers that he would not so consent because such use of the funds of the company would destroy the value of the stock, and it is said that to meet that objection the additional 214 shares were put up. But here again no one testifies that with this additional security complainant was satisfied or withdrew the objection which he had already made. The testimony of himself, his son and son-in-law is direct and positive to the fact that they neither of them ever consented to the use of the company funds in payment for their shares of stock sold. · We are satisfied that the circuit and Appellate Court have properly found in favor of the complainant on this issue, and without extending this opinion in the discussion of the question as to the injurious results upon the complainant's security, we think, in view of the admissions made in the answer, appellant has no ground of complaint of the decree against him.

After the master had made his report to the court and the exceptions to it were sustained, this entry was made: "It appearing to the court that the complainant, John W. Hedenberg, and the defendants Pope and Clifford and A. Emma Smith, have adjusted their differences out of court, now, on motion of complainant and by consent of said defendants this bill is dismissed as to said Eugene Clifford, A. Emma Smith and William H. Pope, without costs to either party." It is insisted that after the entering of this order the relief granted against defendants could not properly be entered. We do not concur in this view. The relief sought against the parties dismissed from the bill was not the basis of or so connected with that prayed against appellant as that they continued to be necessary parties to the final decree against him. In addition to this, no objection was made by appellant, or either of the other officers and directors of the company, to the dismissal.

We regard this case, under the pleadings, as one of fact, so largely depending upon whether the $15,200 of company money was taken from its treasury and applied to the payment of a debt owing by its individual stockholders without the consent of complainant, that when that question is determined adversely to appellant other grounds of reversal urged are of no substantial merit.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*