Nova Pyle, Appellant, v. Fred O. Groth, Appellee.

Gen. No. 47,128.

First District, Third Division.
November 6, 1957.
Rehearing denied December 4, 1957.
Released for publication December 18, 1957.

Edward F. Moye, of Chicago, for appellant.

McBride and McLennon, of Chicago (Thomas G. McBride, of counsel) for appellee.

JUDGE FRIEND delivered the opinion of the court.
On October 25, 1955 plaintiff brought suit to recover damages for personal injuries sustained by her as the result of a fall down an unobstructed stairway while she was inspecting a house owned by defendant in

Park Ridge, Illinois which he was exhibiting to the public and offering for sale. Summons issued forthwith, was delivered to the sheriff of Cook county for service and was returnable November 21, 1955. On November 1, 1955 summons was filed in the clerk's office bearing the following return by the sheriff: "I certify that I served the within writ on the within named defendant, Fred O. Groth, by leaving a copy thereof with said defendant personally, this 29th day of October, 1955. Joseph D. Lohman, Sheriff, by Samuel J. Wolinsky, Deputy." Thereafter, on December 7, 1955, an order of default was entered against defendant for want of an appearance. About a week later the case was assigned for trial, and on December 19, 1955 judgment was entered in favor of plaintiff for $18,500 and costs. The order recited that the court had heard the testimony of plaintiff and that of Dr. Richard J. Bennett, Jr., on her behalf. Later, on February 2, 1956, an execution was issued, directed to the sheriff of Lake county, and on February 15, 1956 was served on defendant, who on February 28, 1956 filed a petition to vacate the judgment. In July 1956 the matter came on for hearing on defendant's petition and plaintiff's answer thereto. The trial court entered an order vacating the judgment and quashing the return of summons, from which plaintiff appeals.

Defendant alleged in his petition, and here contends, that the sheriff's return on the summons showing personal service on October 29, 1955 was false, that defendant was not served and did not know of the pendency of the action or of the judgment until he was served with an execution in February 1956. On the other hand, plaintiff's answer alleges, and on appeal she contends, that defendant was served with summons on the day in question, that the sheriff's return was correct, and that accordingly the original judgment in her favor should stand.

362

On hearing of the petition and answer, Deputy Sheriff Samuel Wolinsky testified that he served summons on defendant at his residence at 532 Briarhill Road, Deerfield, Illinois, and signed the return on the summons; that he and his partner, Deputy Sheriff Joseph Maggiore, made service on the morning of Saturday, October 29, 1955; that on that date he and Maggiore had been assigned to meet their superior officer, Edward E. Lavin, Assistant Chief Bailiff, at 9:00 a.m. at the Morton Grove Police Station in Cook county to search the neighborhood fields and woods in connection with the murder of three boys; that he arose at 6:30 a.m., met Maggiore at 7:00 a.m., had breakfast with him in a restaurant, which took about ten minutes, and that together they went to Deerfield, arriving there about 8:00 a.m.; that because they were strangers in the area they asked a Deerfield police officer to direct them to defendant's residence at 532 Briarhill Road; that they were told they would recognize the street by stone pillars bearing the street name Briarhill Road; that they found the pillars as directed and located the Groth residence; that they drove their car into the driveway, where they parked it, and walked to the house and rang the bell; that a man in pajamas came to the door, that he asked him his name, and that the man said it was Groth; that he then told him that he had a summons for him, gave him a copy of it, and thereupon left with his partner Maggiore; and that he had no watch with him, but he reckoned that he drove into the grounds of defendant's residence at some time between 8:00 and 8:30 a.m. After serving the summons the two deputies got in their car and reached Morton Grove about 9:30 a.m. They had been directed to meet Lavin there at 9:00 a.m. but were late for the roll call. Wolinsky told Lavin that the reason for their tardiness was that they had made a service of summons in Deerfield. Later he handed the

363

summons to the clerk in the sheriff's office, who stamped it, and Wolinsky signed the return and put it in the basket. Maggiore's testimony, with some slight variations which are inconsequential, was to the same effect.

Edward E. Lavin, testifying on behalf of plaintiff, stated that on October 28, 1955 the bailiffs in the sheriff's office, including Wolinsky and Maggiore, were ordered to report to the Milwaukee Avenue Highway Police Station at 9:00 a.m. on the following day. The weather that day was bad—the sheriff himself was delayed—and several of the deputies were late. The roll call was not begun until about nine-fifteen. Wolinsky and Maggiore arrived after roll call and explained to Lavin that their tardiness was the result of their having served a summons in Deerfield. Lavin immediately reported this to Dan Smith, Assistant Chief Deputy Sheriff, as the reason for their late arrival. He did not recall the exact time that Wolinsky and Maggiore appeared, but his best recollection was that they came between nine and ten.

Dan Smith, also called as a witness on behalf of plaintiff, testified that he had called this meeting of sheriff's employees for 9:00 a.m. on October 29, 1955; that Maggiore and Wolinsky were absent when he called the roll at nine-fifteen, but that before the deputies left on their assignment Lavin brought the men over to him. All the men were in the territory assigned to them between nine-thirty and ten.

As against this evidence defendant offered his own testimony, and that of his wife Eleanor and his twenty-one year old daughter Dianne, who all stated that neither Deputy Maggiore nor Wolinsky came to defendant's home on October 29, 1955, and that no copy of a summons was left there on that date. Defendant testified that he and his wife breakfasted together some time after seven, that their daughter joined them

364

shortly before they were finished, that he scanned the newspaper before leaving about nine with his wife for an appointment at Touhy Avenue and Dee Road in Park Ridge, which was about a twenty-five to thirty minute ride, and that he arrived for his appointment about nine-thirty. Mrs. Groth's testimony substantially paralleled that of her husband; she stated that they arose about seven that morning and had a rather hurried breakfast, at which their daughter later joined them. Her husband usually looked at the paper after breakfast on Saturday, and she supposed that he had done so that morning. They left the house about nine o'clock for their nine-thirty appointment in Park Ridge and arrived there on time. Dianne substantiated her parents' testimony.

Phillip Mitchell, testifying on behalf of defendant, stated that he had an appointment with the Groths at Touhy Avenue and Dee Road at 9:45 a.m., at which time he and Mrs. Mitchell arrived there and waited for the Groths, who drove up just a little later. From there, Mitchell and his wife followed defendant's car to 740 Sylvia Wood, Park Ridge, where they arrived about ten and inspected the premises. Meanwhile, a plumbing truck which was delivering material had slipped off the driveway and become stuck in mud, and Mitchell drove with Groth to the plumbing shop to dispatch another truck. The Mitchells left the premises at about eleven. Mrs. Mitchell did not take the stand, nor was any reason given for her failure to do so.

William Hutter, who was driving the truck referred to in Mitchell's testimony, stated that he arrived with his truck at 740 Sylvia Wood at about 9:45 a.m.; that as he was unloading its contents it slid off the drive; and that defendant drove up about ten.

Another witness, Richard Hummel, testifying for defendant, stated that he met Mrs. Groth at 740 Sylvia

365

Wood shortly after ten o'clock and arranged to close the deal for the purchase of that property that afternoon; and that he and Mrs. Hummel met the Groths on the premises at about one-fifteen in the afternoon.

None of defendant's witnesses, except the Groths, were at 532 Briarhill Road, Deerfield, at any time on October 29, 1955.

██ The rule is well settled in this State that the sheriff's return on a summons is prima facie proof of service and can be overcome only by clear and convincing proof. Marnik v. Cusack, 317 Ill. 362; Cannata v. White Owl Express, Inc., 339 Ill. App. 79. The reason for the rule is well founded on public policy and its rationale is stated in the Marnik case as follows: "The stability of judicial proceedings, however, requires that the return of an officer made in the due course of his official duty and under the sanction of his official oath should not be set aside merely upon the uncorroborated testimony of the person on whom the process has been served but only upon clear and satisfactory evidence," relying on Davis v. Dresback, 81 Ill. 393, and Kochman v. O'Neill, 202 Ill. 110. Where the legality of the acts of a public officer are brought collaterally into question, he will be presumed to have done his duty. Hogue v. Corbit, 156 Ill. 540. " 'A sound public policy, the security of litigants and the stability of legal proceedings demand that the return of the sworn officer shall not be set aside or impeached except upon satisfactory evidence. Every presumption in favor of the return is indulged, and it will not be set aside upon the uncorroborated testimony of the party upon whom service purports to have been made.' Kochman v. O'Neill, 202 Ill. 110." Couch v. Illinois Cent. R. Co., 213 Ill. App. 429. In the case at bar the legal presumption of verity of the sheriff's return of service was strengthened by the testimony of Wolinsky and Maggiore and other disinterested parties. The service was made on defendant personally.

The question arises whether this presumption was overcome by evidence offered by defendant. Defendant, his wife and daughter were all interested parties. The gravamen of their defense is that in view of the time stated by the deputy sheriffs as to when summons was served on Groth at his home in Deerfield, between 9:00 and 9:30 a.m., it would follow from the testimony of all the Groths that defendant was not at home at the time of the supposed service. Their testimony was that Groth left his home about nine o'clock, and that he arrived in Park Ridge at nine-thirty for his appointment. Defendant contends that the testimony of his other witnesses corroborates this time version of the affair. In addition to giving testimony, Groth filed affidavits made by his wife and daughter denying service. In Burton v. Cooley, 22 S. D. 515, 118 N. W. 1028, on a motion to set aside a default judgment on the ground that a summons had not been served, the officer's sworn return of service of summons made a few days after service—in connection with which he had no motive to misstate the facts—was, so the court held, sufficient to warrant it in regarding the return as true despite affidavits contradicting service made by the judgment defendant and his wife. The court there referred to an earlier and analogous South Dakota case, Matchett v. Liebig, 20 S. D. 169, 105 N. W. 170, and quoted with approval language used in the Matchett case: " 'It would be a very dangerous rule to establish that a defendant, after a default judgment had been entered against him, might, upon the affidavit of himself or his wife, denying the service as claimed to have been made, have the same vacated and set aside, where the proof of service is as full and complete as that in the case before us.' "

Furthermore, the testimony of defendant and his witnesses contained discrepancies. The Groths' testimony is contradicted by that of Mitchell, who said that his appointment with the Groths was at 9:45 a.m., that

■

he arrived on time and waited a short while for their arrival. Defendant had stated that it took twenty-five to thirty minutes to drive from his home to the Park Ridge place of appointment. Accordingly, he and his wife must have left their home not earlier than nine-fifteen, and this would seem to contradict their testimony that they had left about nine. Both deputy sheriffs testified that they had served Groth at his home between 8:30 and 9:00 a.m.; therefore, if the Groths did not leave their home until after nine, it seems likely that the deputy sheriffs served summons on defendant before his departure.

■ There are of course other discrepancies in the testimony on both sides with respect to the time element and otherwise, but we are satisfied from an examination of all the evidence that defendant did not meet the burden imposed upon him to impeach the sheriff's return or to show by clear and convincing evidence that the summons was not served.

For these reasons we hold that the order of the Circuit Court vacating the judgment and default order quashing the return of summons was erroneously entered. The order is therefore reversed and the cause remanded with directions to dismiss defendant's petition.

Order reversed and cause remanded with directions.

BURKE, P. J., concurs.

BRYANT, J., took no part.