Bowman Shoe Co., an Illinois Corporation, Plaintiff-Appellee, v. Algot J. Bowman et al., Defendants-Appellants, and Everett G. Bowman et al., Defendants-Appellees.

Gen. No. 11,266.

Second District, Second Division.

May 6, 1959.

Released for publication May 22, 1959.

Howard & Padella, of Monmouth, and Bell, Boyd, Marshall & Lloyd, of Chicago (David A. Watts, Leigh R. Gignilliat, Robert H. Howard, Arthur M. Padella, of counsel) for Algot J. Bowman, Allen J. Bowman and Donald J. Bowman, defendants-appellants.

James A. Sprowl, of Chicago, and John J. Kritzer, of Monmouth (Thompson, Raymond, Mayer, Jenner & Bloomstein, of counsel) for Bowman Shoe Co., plaintiff-appellee.

PER CURIAM.

This is an interlocutory appeal by the defendants-appellants Algot J. Bowman, Allen J. Bowman, and Donald J. Bowman, from an interlocutory temporary injunction order of January 2, 1959, issued by the Circuit Court of Warren County, in substance, enjoining all of the defendants,—the appellants and the other defendants-appellees, Everett G. Bowman, John A. Bowman, and Mabel M. Bowman, who do not appeal, from (a) voting their stock as shareholders in Bowman Shoe Co., a corporation, the plaintiff-appellee, at a meeting of shareholders scheduled to be held January 2, 1959, or at any other meeting, in any manner which might alter or tend to alter the present composition of the board of directors or officers of the corporation, and from voting their stock upon any matter involved in the present pending litigation, (b) paying any further salaries to the defendants as officers of the corporation, and (c) paying any gratuities to any person, out of the monies of the plaintiff-

appellee corporation, until the pending action is heard and decided upon its merits, or until the further order of the Court. The order finds the plaintiff-appellee corporation is solvent, no bond should be required, directs the temporary injunction to issue without bond, and the Court retained jurisdiction to require a bond in the future should occasion require, and for all other purposes incident to the cause. The matter was heard on the verified petition of the plaintiff-appellee, Bowman Shoe Co., for a temporary injunction, the verified answer and supplemental answer thereto of the defendants-appellants, affidavits, and oral and documentary evidence, and the hearing occupied portions of three days prior to the entry of the order.

It appears that the Bowman Shoe Co., an Illinois Corporation, the plaintiff-appellee, filed a complaint (subsequently verified) in the cause on October 2, 1958, against the defendants Algot J. Bowman, John A. Bowman, Everett G. Bowman, Allen J. Bowman, Mabel M. Bowman, and Donald J. Bowman, alleging in substance, so far as now material: the plaintiff Bowman Shoe Co. since its organization in 1952 has been, and presently is, conducted by Algot J. Bowman, Chairman of the Board, Allen J. Bowman, Vice Chairman (until 1958), Everett G. Bowman, President, John A. Bowman, Vice President, Mabel M. Bowman, Secretary-Treasurer, and Donald J. Bowman, Vice President,—and largely by Everett, John, Mabel, and Donald; those same six parties, all defendants here, were also elected Directors and have continued to act, and presently act, as Directors throughout the years 1953–1958, except Allen J. Bowman who resigned during 1958; the corporation has certain authorized and issued shares; the present shareholders and the amounts of their shares are alleged,—and all of the present six defendants are also shareholders; the plaintiff corporation operates several shoe stores in

426

Illinois and Iowa; the defendants, as Directors, adopted, unanimously, resolutions throughout those years, voting themselves, as Officers, substantial salaries, which were paid by the plaintiff corporation, and which, as to Algot and Allen, are alleged to be not in accordance with services rendered or the value thereof to the corporation but to divide up some of the corporate profits and to have been grossly in excess of the value of such services, and which, as to Everett, John, Mabel, and Donald, the plaintiff demands they justify the amounts of their salaries; the defendant Algot's alleged salary ranged from $33,600–$27,500 per annum and was $27,500 in 1958; the defendant Allen's alleged salary ranged from $33,120–$18,000 and was $18,000 in 1958; the defendant Donald's alleged salary ranged from $7200–$12,500 and was $12,500 in 1958; the defendant Everett's alleged salary ranged from $24,000–$25,000 and was $25,000 in 1958; the defendant John's alleged salary ranged from $24,000–$25,000 and was $25,000 in 1958; the defendant Mabel's alleged salary was $19,560 throughout and was $19,560 in 1958; Sadie L. Bowman, widow of Orville J. Bowman, a predeceased brother (who died in 1943) and former business associate of Algot and Allen in predecessor businesses, was voted, unanimously, by the Directors a pension of $450–$500 per month, from 1953–1958, which was paid by the plaintiff corporation, and such was an improper corporate expense; the defendant-appellant Algot J. Bowman has done no substantial work for the plaintiff-appellee corporation since early January, 1958 and from 1952 to the present his services were of a very general nature; the defendant-appellant, Allen J. Bowman, is not presently rendering any services to the plaintiff, rendered no substantial services in 1958, and has not rendered any services of consequence for a number of years; the defendants-appellants Algot and

427

Allen have owned a controlling majority of the shares (allegedly about 59%), can and could have elected a majority of the Directors, have dominated the Directors, and have insisted on salaries as officers primarily as a means of dividing profits of the corporation, without regard to the value of any services performed to the corporation; the United States Internal Revenue Service has audited the plaintiff corporation's income tax returns for 1953 and 1954, disallowed substantial parts of Algot's and Allen's salaries and all of the pension to Sadie L. Bowman as corporate expenses, which will result in substantial corporate income tax deficiencies, and is now auditing such returns for the following years; the defendants Algot and Allen have expressed a determination to continue to withdraw salaries in approximately the amounts previously drawn, and they intend at the next annual meeting to elect a Board of Directors which will elect them as principal executive officers of the company and will vote them salaries substantially as large as they have previously received. The complaint prays that the defendant-appellant Algot J. Bowman be required to return to the corporation $110,000 in allegedly excessive salaries paid to him for the years 1953 to 1958; the defendant-appellant Allen J. Bowman be required to pay the corporation $130,000 in allegedly excessive salaries paid to him during those years,—or such other amounts as the court finds in excess of the true value of their services; a decree be entered against each of the defendants for all monies of the plaintiff corporation wasted by them through allegedly excessive salaries to themselves or other employees or officers, or on account of alleged pensions or gratuities illegally voted to third persons; the defendants be enjoined from paying salaries to anyone who does not render services to the plaintiff corporation, and from paying any salary which may exceed

the reasonable value of the services to the plaintiff; and for general relief.

The defendants-appellees Everett G., John A., and Mabel M. Bowman filed an answer to the complaint praying that it be dismissed as to them, and a counterclaim praying for substantially the same relief against the defendants-appellants as does the complaint of the plaintiff-appellee to that extent, and for liquidation of the assets of the corporation, and for general relief.

The defendants-appellants filed a motion directed to that answer and counterclaim of the defendants-appellees.

The defendants-appellants also filed a motion to dismiss the complaint, based on the alleged lack of authority in the defendant-appellee Everett G. Bowman and the plaintiff corporation's attorneys to file this suit on behalf of the corporation, and an affidavit of facts in support of such motion, to which affidavit were attached numerous exhibits, including copies of purported waivers by certain of the other shareholders in the plaintiff corporation who are not parties to this suit of any rights they might have to bring an action to recover for the corporation any monies paid to the defendants or Sadie L. Bowman.

Then, while this suit was so pending, and on December 29, 1958, the plaintiff corporation, Bowman Shoe Co., filed its verified petition for a temporary injunction herein, and, among other things, alleged, in substance, so far as now material: the amount of issued shares of the plaintiff corporation; the amounts owned by the defendants-appellants, alleged to be more than a majority; the amounts owned by the defendants-appellees and by Sadie L. Bowman, mother of the defendants-appellees; the current salaries being paid the defendants; the salaries of Algot J. and Allen J. Bowman are grossly excessive; the defendant-appellee,

Everett G. Bowman, authorized the bringing of this suit; the defendants-appellees John A. Bowman and Mabel M. Bowman, have not opposed the suit; the defendants-appellants have opposed the suit; the annual meeting of the shareholders is scheduled to be held January 2, 1959, and if the defendants Algot J. Bowman, Allen J. Bowman, and Donald J. Bowman, are permitted to hold the meeting and vote their shares, they will elect a majority of the new Board of Directors whose views will be favorable to theirs, and who will dismiss the present proceeding or otherwise terminate it without pressing the claims of the plaintiff corporation against the various defendants, and particularly against Algot J. Bowman and Allen J. Bowman; the defendants-appellants intend to attend that meeting, vote their shares so as to elect a new Board the majority of whom will be opposed to this suit, cause the new Board to replace the defendants-appellees as officers, and elect new officers who will refuse to continue prosecution of the suit, and will cause the new Board to elect Algot J. and Allen J. as officers and vote them salaries as large or larger than at present; and certain allegations are made concerning the corporation's financial position and the alleged necessity of protecting its cash position by an injunction temporarily restraining the payment of any further alleged excessive salaries. The prayer of the petition for a temporary injunction was, in substance, that all of the defendants be enjoined from holding or attending or voting their stock at such shareholders' meeting or any other meeting in any manner which might alter or tend to alter the present composition of the Board or officers of the plaintiff corporation, from paying any further salaries to any of the defendants, and from paying any gratuities to any person until the further order of the court.

430

The defendants-appellants filed a verified answer to the plaintiff's petition for temporary injunction asking it be denied, which, in substance, so far as now material: admits the alleged amount of issued shares, and the respective amounts thereof owned by the defendants and Sadie L. Bowman; denies the allegations as to current salaries being paid and that the salaries of Algot J. and Allen J. Bowman are grossly excessive; admits the defendant-appellee Everett G. Bowman wrote a letter to one of the plaintiff-appellee corporation's attorneys to bring this suit; admits the defendants-appellees John A. and Mabel M. Bowman have not opposed the suit; admits the defendants-appellants have opposed the suit as brought and in the manner brought by the present attorneys for the plaintiff corporation; denies the defendant-appellee Everett G. Bowman is President of the corporation; admits they intend to attend the shareholders' meeting of January 2, 1959 and to vote their shares to help elect a new Board; says they are unable now to determine who the Board (or Officers) will be until after the shareholders vote thereat, cannot and do not admit or deny the allegations as to what the then Board (or Officers) will do as to this suit (or salaries) and hence deny such; says they do not believe this suit was in the best interests of the corporation, was prematurely brought, and not authorized; makes certain allegations as to the corporation's financial condition and denies that its cash position should be protected by an injunction restraining payment of salaries; says that the defendants-appellees are conspiring to continue themselves in control of the corporation, though opposed by the majority shareholders, until they can sell their shares at excessive prices, which they are attempting to do; says a temporary injunction should not issue because of the complex nature of the dispute and because such would leave the corpo-

431

ration without adequate officers; and says no officers have authority to sign a bond for the corporation without a meeting of the Board. There are some 21 exhibits attached to the defendants-appellants' answer to the petition and some three other subsidiary exhibits attached to one or more of the twenty-one exhibits.

The defendants-appellants also filed a verified supplemental answer to the petition for temporary injunction, which, so far as now material, in substance: purports to deny some of the allegations of the complaint, notably those to the effect the salaries of the defendants-appellants Algot J. and Allen J. Bowman were determined not in accordance with services rendered or the value thereof to the corporation but to divide up some of the corporate profits and were grossly excessive, those relating to the alleged services or lack of services of Algot and Allen to the corporation, that to the effect the defendant-appellee Everett G. Bowman is President, and that to the effect Everett G., John A., Mabel M., and Donald J. Bowman have largely conducted and carried on the business; purports to admit the allegations of the complaint to the effect Everett G., John A., Mabel M., and Donald J. Bowman have rendered substantial services and are entitled to reasonable compensation from the corporation; is substantially silent as to the remaining substantive allegations of ultimate fact in the complaint; says they intend to exercise their rights as shareholders at the January 2nd meeting and do not know what the actions of the Board to be elected will be; and denies they intend to pay any excessive salaries.

There was a petition for leave to intervene by Bruce J. Nelson, a stockholder who was not a party to the suit, which is not fully abstracted.

432

In addition, there were affidavits by Mabél M. Bowman, a defendant-appellee, Everett G. Bowman, a defendant-appellee (with some eight exhibits attached) James A. Sprowl, one of the attorneys for the plaintiff-appellee corporation, John J. Kritzer, one of the attorneys for the plaintiff-appellee, and Robert J. Clendenin, attorney for the defendants-appellees (with two exhibits attached). The affidavit of Mabel M. Bowman refers to certain proceedings of the Board of Directors of December 19, 1958 relating to salaries of certain of the officers and monies paid the corporation's attorneys in this suit, on all of which the Board was deadlocked 3–3. The affidavit of Everett G. Bowman refers to certain proceedings of the Board of July 15, 1958 at which the Board deadlocked 3–3 on the question of employing counsel relative to claimed excessive salaries, from which it appears Allen J. Bowman, one of the defendants-appellants, had resigned July 1, 1958 as a Director and Robert H. Howard, one of the attorneys for the defendants-appellants, had been elected to succeed him at a special shareholders' meeting by virtue of their control of a majority of the shares; the affiant, as President, employed the present counsel for the corporation relative to any possible causes of action it might have against its officers, directors, or shareholders; the affiant received a letter of April 25, 1958 from one of the attorneys for the defendants-appellants calling attention to the facts that the affiant and the other defendants-appellees are not majority shareholders and stating "your position will not continue after the annual meeting of shareholders to be held next January unless the attitude of the majority shareholders suffers a marked change."

At the hearing, for the plaintiff-appellee corporation, Algot J. Bowman, one of the defendants-appel-

lants, testified as an adverse witness, and Mabel M. Bowman, one of the defendants-appellees, testified; the Court denied the defendants-appellants' oral motion to dismiss the petition for temporary injunction; the defendants-appellees offered no evidence; for the defendants-appellants, Mabel M. Bowman, Bruce Nelson, and Everett G. Bowman, testified as adverse witnesses, and Algot J. Bowman testified; and there were several exhibits admitted as documentary evidence. So far as seems necessary for the present purpose, the principal pertinent parts of the oral and documentary evidence may be briefly summarized as follows: As of May 22, 1958, Algot's general position in the matter had not substantially changed from that outlined in his attorney Mr. Howard's letter of April 25, 1958 to Everett, a copy of which is attached to Everett's affidavit and to which we've previously referred. In 1957, though it was alright with Algot to adjust salaries, his thought was that in giving his associates additional responsibilities and increased salaries over the years such was not done with the idea he and Allen should take comparable decreases in salaries then or later. There is no dispute as to the ownership of the shares of the corporation. The by-laws do not provide for a Chairman, or Vice Chairman. There are no employment contracts between the plaintiff corporation and any of the defendants, officers, beyond the annual meeting of the Board then scheduled for January 2, 1959. There is some dispute as to whether Everett G. Bowman is now validly President. The corporation is not insolvent. There was evidence of what salaries the United States Internal Revenue Service considered allowable as a corporate expense for corporate income tax purposes, and of the complete disallowance in that connection of the pension paid Sadie L. Bowman. A letter from a prominent shoe manufacturer indicates his opinion the

corporation's total officers' salaries were "on the high side of the average," but not unreasonable, and the division thereof between various officers was an internal problem on which he had no opinion. Bruce Nelson, a stockholder, who is not a party hereto, received each year shareholders' reports from the corporation indicating total officers' salaries but he did not know until recently the defendants' individual salaries, and he has signed no waiver of any right of action on behalf of the corporation, and Everett G. Bowman at one time suggested he discuss with one of the attorneys for the corporation a stockholder's derivative suit. The defendant-appellant Algot J. Bowman felt the deadlock in the Board of Directors should be removed at the annual meeting of shareholders January 2, 1959; in March, 1958 he felt the 1958 salaries of officers should stand as they had been previously determined at the 1958 annual meeting, which amounts we've heretofore set forth; and at about that same time he speaks of the present "reasonable return" on his investment (shares) in the corporation,—presumably meaning by way of officers' salaries inasmuch as there is no evidence of any current dividends as such on the shares.

All of the defendants in this case are related to each other, and each is a shareholder, director, and officer in the plaintiff corporation (except that Allen J. Bowman resigned as a director and officer in 1958). The defendants-appellants Algot J. Bowman and Allen J. Bowman, are brothers. The defendant-appellant Donald J. Bowman is the son of Algot J. The defendants-appellants, together, own about 53% of the stock of the plaintiff corporation. The defendants-appellees Everett, John and Mabel Bowman are the children of Orville J. Bowman, a deceased brother of Algot and Allen, and they together own about 20% of plaintiff's stock. There are five other shareholders

in the plaintiff corporation, who are not parties defendant. Of these others, the largest shareholder is Sadie L. Bowman, widow of Orville J. Bowman, deceased, and mother of the defendants-appellees, Everett, John and Mabel, and she owns about 16% of the stock, and one of the defendants-appellees holds her proxy. The alleged gratuities which the plaintiff corporation seeks to recover here were paid to Sadie L. Bowman.

Subsequent to the issuance of the interlocutory temporary injunction order, and while this interlocutory appeal was pending, an application for a stay order during the pendency of the appeal was made to this Court by the defendants-appellants, and this Court, after a full hearing and oral argument on this application, the record, abstracts, and briefs being on file, granted a stay order from the portion of the injunction enjoining the voting of the stock at the stockholders' meeting scheduled to be held on January 2, 1959, or any other day, or on matters involved in this litigation, upon certain conditions as stated in the stay order, including the filing by the defendants-appellants of a bond, for the benefit of the plaintiff corporation, that they cause the corporation to proceed with due diligence with the prosecution of this suit, —the stay order being granted pursuant to Section 78 of the Civil Practice Act relating to interlocutory appeals, Supreme Court Rule 31, and Appellate Court Rule 23: Chap. 110, Ill. Rev. Stats., 1957, pars. 78, 101.31, and 201.23.

As was suggested in Forster v. Fruin and Walker Co. (1912), 170 Ill. App. 89, we purposely refrain at this time at this preliminary stage of this litigation from any extended comment on the pleadings or the facts as they appear from the record and from any extensive statement of the considerations and reasons leading to our conclusion, lest such be incorrectly con-

strued or interpreted as indicating an opinion by us, as to the ultimate merits of the controversy, and this we wish to avoid. The ultimate merits of the controversy, and, indeed, the definitive legal sufficiency of the complaint are not before us at this time and nothing herein is to be considered as expressing any view thereon.

 As to those parts of the temporary injunction order which restrained the defendants from paying any further salaries to themselves as officers of the corporation, and from paying any gratuities to any person, during the pendency of this suit or until the further order of the court, we think there was a sufficient showing before the trial court to justify it in entering the order in those respects. We think it appropriate to call attention to the general principles stated in Bixler v. Summerfield (1902), 195 Ill. 147, a case involving somewhat analogous facts, though on a much smaller scale, and where the Court said, p. 150:

". . . . In Green v. Hedenberg, 159 Ill. 489, we said (p. 493): 'It is well settled in this State, that, where the officers of a corporation wrongfully deal with its property to the injury of stockholders, the latter may maintain a bill against the company and its officers for relief against such misappropriation.' If, as is alleged in substance in the bill, the stock held by the appellant was impaired in value by a misappropriation of the corporate funds, there is no good reason why the appellant might not, as might any other stockholder, maintain his bill for relief. Such misconduct of the corporate officers may be no cause for a dissolution of the corporation at the suit of a minority stockholder. . . . . But where the Board of Directors of a corporation 'vote large pay to themselves, evidently in bad faith, and with a view to depriving the corporation of more than a

reasonable proportion of its net earnings, a dissenting stockholder may file a bill in equity to have the amount recovered back.' . . . . If one family, holding the majority of the stock of a corporation, vote away the corporate profits for salaries, the minority may call upon a court of equity to remedy the fraud."

As to that part of the temporary injunction order which restrained the defendants from voting their stock at a shareholders' meeting January 2, 1959, or at any other meeting, in any manner which might alter or tend to alter the present composition of the board of directors or officers, and from voting their stock upon any matter involved in the present pending litigation, until the present action is heard and decided upon its merits, or until the further order of the Court, being the first paragraph of the ordering part of that order, we think there was a sufficient showing before the trial court to justify it in entering the order in that respect but that, under the circumstances, as indicated by the record here, that part should, equitably, be modified to incorporate certain of the substance of the provisions of the stay order previously entered here, so as to read, as so modified, as follows:

"Ordered and decreed that the defendants Algot J. Bowman, John A. Bowman, Everett G. Bowman, Allen J. Bowman, Mabel M. Bowman and Donald J. Bowman be and they are hereby enjoined and restrained from voting any of their stock in Bowman Shoe Co., either directly or indirectly in person or by proxy at the meeting of shareholders now scheduled to be held on January 2, 1959, or at any other meeting of shareholders held on any other day, in any manner whatsoever which might alter or tend to alter the present composition of the board of directors or officers of Bowman Shoe Co., or from voting any of

438

their stock in said Bowman Shoe Co. directly or indirectly in person or by proxy upon any matter involved in the above entitled litigation presently pending before this court, until such time as the above entitled action shall have been heard and decided upon its merits, by this court or until the further order of this court,—unless said defendants, or any of them, file herein a bond in the sum of Fifty Thousand Dollars ($50,000.00) with good and sufficient surety to be approved by the Circuit Court, said bond to accrue to the benefit of the plaintiff corporation, upon the following terms and conditions: that said defend-. ants, or such of them as file such bond, cause said plaintiff corporation, through the duly elected and qualified officers when elected, to proceed with due diligence with the prosecution of this suit for the relief prayed for in the complaint.

"It is further ordered that the bond heretofore filed in the Appellate Court of the State of Illinois, Second District, on February 24, 1959, by Algot J. Bowman, Allen J. Bowman and Donald J. Bowman on which United States Fidelity and Guaranty Company is surety in the amount of $50,000 shall stand as and fulfill the conditions for the bond required in the foregoing part of this order so long as said bond stands undischarged, and it is further ordered that any suit or proceedings which may be brought against any part for the forfeiture of said bond shall be commenced in the Circuit Court of Warren County, Illinois.

"It is further ordered that the term 'due diligence' as contained in this order and in any bond required hereunder shall require the employment of counsel to prosecute said suit and shall not be construed in such a manner as to hinder or prevent Algot J. Bowman, Allen J. Bowman, John A. Bowman, Everett G.

439

Bowman, Mabel M. Bowman and Donald J. Bowman, or any one or more of them, from asserting, presenting and prosecuting to final determination as individual defendants in said suit any defenses or objections to pleadings they or any one or more of them may claim to have in the same manner as though no bond had been filed."

 The primary purpose of a temporary injunction is to preserve matters in status quo until the Court has an opportunity to consider the cause upon its merits or upon a motion to dismiss. The status quo which should be preserved is the last actual, peaceable, uncontested status which preceded the pending controversy. The granting or refusing of a temporary injunction rests largely in the discretion of the Chancellor. The applicant for a temporary injunction is not required for that purpose to make out a case which would entitle him, at all events, to injunctive relief at the final hearing. He must prima facie show for that purpose that he raises a fair question as to the existence of the right he claims, present circumstances leading to a belief he probably (though not necessarily) will be entitled ultimately to relief, if the proof sustains his allegations and if no substantial defense be made out, and satisfy the court that matters should be preserved in status quo until the cause can be later heard. The primary purpose of Section 78 of the Civil Practice Act as to interlocutory appeals from interlocutory orders concerning injunctions is to permit a review of the exercise of the Chancellor's discretion, and unless the Appellate Court finds the Chancellor's discretion has clearly been abused or not properly exercised the interlocutory order will not be reversed: O'Brien v. Matual (1957), 14 Ill.App.2d 173; Shatz v. Paul (1955), 7 Ill.App.2d 223; West Side Hospital of Chicago v. Steele (1906), 124 Ill. App.

534; Fitzgerald v. Christy (1926), 242 Ill. App. 343; Gillam v. 661 Sheridan Apartments, Inc. (1953), 1 Ill. App.2d 11; Forster v. Fruin and Walker Company (1912), 170 Ill. App. 89. Interlocutory temporary injunctions restraining, among other things, the payment of certain corporate officers' salaries were affirmed upon interlocutory appeals in the foregoing Fitzgerald, Gillam, and Forster cases. In Merrifield v. Burrows (1910), 153 Ill. App. 523,—a case described as one of extreme necessity,—an interlocutory temporary injunction order restraining, among other things, certain defendants, stockholders, directors, and officers of a corporation from holding or prolonging a stockholders' meeting and electing directors or officers was affirmed on an interlocutory appeal. Injunctions against shareholders' meetings and voting thereat are, however, to be granted sparingly and only in cases of urgent necessity: Shlensky v. South Parkway Bldg. Corp. (1953), 350 Ill. App. 293. Subject to the modification we have heretofore indicated in the first paragraph of the ordering part of the interlocutory temporary injunction order here concerned, we do not believe the Chancellor's discretion has clearly been abused or not properly exercised in entering the order.

██ ██ As to that part of the order granting the temporary injunction without bond, under the injunction statute, Ch. 69 Ill. Rev. Stats. 1957, par. 9, "bond need not be required when, for good cause shown, the Court or Judge is of opinion that the injunction ought to be granted without bond." Making a bond a prerequisite to the issuance of an injunction is a matter in the sound judicial discretion of the Chancellor: Mitchell v. Mitchell (1956), 10 Ill.App.2d 437; Morris v. Patterson (1941), 311 Ill. App. 657,—the order here, in effect, finds that good cause was shown, and there was no clear abuse of discretion in this respect.

Accordingly, the interlocutory temporary injunction order is hereby modified as to the first paragraph of the ordering part thereof to read as we have heretofore set forth, and is in all other respects affirmed.

Modified in part, and affirmed in part.

WRIGHT, P. J., concurs.