ROBERT POLIVKA, Plaintiff-Appellant-Appellee, *v.* WORTH DAIRY, INC., *et al.*, Defendants—(DAVID ZUIDEMA, Defendant-Appellee, and FRED J. RUETER, Defendant-Appellant.)

(No. 59232; ▮▮▮▮▮▮▮▮▮▮▮)

First District (1st Division)—August 5, 1974.

*Supplemental opinion filed upon denial of rehearing April 21, 1975.*

Arthur George, of Chicago, for plaintiff-appellant-appellee Robert Polivka.

Russell M. Kofoed, of Lederer, Fox and Grove, of Chicago, for defendant-appellant Fred J. Rueter.

Klein, Thorpe, Kasson and Jenkins, of Chicago (Franklin W. Klein, of counsel), for defendant-appellee David Zuidema.

Mr. PRESIDING JUSTICE EGAN delivered the opinion of the court:

The plaintiff, Robert Polivka, filed a two-count complaint in Chancery on May 11, 1970, against Worth Dairy, Inc., and Rueter-Worth Dairy Company, the surviving corporation in a merger between Worth Dairy, Inc., and Rueter Dairy Company, and both David Zuidema and Fred J. Rueter personally to recover a balance of money allegedly due him from his sale of common stock to Worth Dairy, Inc. On July 13, 1970, a default order was entered against Rueter personally and against Rueter-Worth Dairy Company. David Zuidema filed a motion to dismiss in part on the ground that the complaint failed to state a cause of action. The motion was denied, and he filed an answer. The case was transferred to the Law Division, and the trial was held on March 6 and 7, 1973. The trial judge entered a finding in favor of Zuidema at the close of the plaintiff's case. At the same time he entered a default judgment against Fred J. Rueter personally in the sum of $14,941. On April 2, 1973, Rueter filed a petition to vacate the default judgment which was denied.

On April 19, 1973, Rueter filed a motion to quash service of summons and that motion was denied. Polivka appeals from the judgment in favor of Zuidema; and Rueter appeals from the order denying his motion to vacate the default and the motion to quash service of summons.

■■ The defendant Zuidema contends in this court that the complaint failed to state a cause of action and that judgment was properly entered in his behalf on that ground. Polivka counters that, since the trial judge denied the motion to dismiss and Zuidema answered and tried the case on the merits, the issue of the sufficiency of the complaint is not properly before us. It is the general rule that a party pleading over after an adverse ruling on his objection to a complaint waives the right to object to the pleading or the ruling on the motion. The rule, however, does not apply where the complaint totally fails to state a cause of action, and under such circumstances it is open to attack even though the defendant has pleaded over. *Precision Extrusions, Inc. v. Stewart*, 36 Ill.App.2d 30, 183 N.E.2d 547.

Count I alleged as follows: On September 3, 1963, the plaintiff was the owner of 25 shares of common stock of Worth Dairy, Inc. (Worth). On that date Worth by its president, David Zuidema, executed an agreement for the purchase of the 25 shares of common stock from the plaintiff for $31,000 payable at a rate of $400 or more on the first day of each

month commencing July 1, 1963, including interest. Pursuant to the agreement Zuidema delivered to Polivka a collateral assignment dated November 1, 1963, signed by Zuidema as president of Worth, authorizing the plaintiff to hold the assignment plus 25 shares of its common stock as collateral security. The corporation was purchasing the 25 shares of stock. Payments were made under the agreement and by September 14, 1968, the obligation was reduced to $12,022.86. On or about November 23, 1964, there was in negotiation a proposed merger with the Rueter Dairy Company. At this time Zuidema represented to the plaintiff that his claim would be protected by the transfer over to him of 50 shares of common stock of the new corporation as collateral security. The plaintiff relied on this representation.

On November 23, 1964, Worth merged with Rueter Dairy Company and the name of the surviving corporation was changed to Rueter-Worth Dairy Company (Rueter-Worth). The new corporation assumed all the liabilities and obligations of Worth but never transferred to the plaintiff 50 shares of common stock as security for plaintiff's claim as previously represented by Zuidema, who later became an officer of the new company. The act of merger was never officially noticed to the plaintiff. The act of merger was thus a notice of intent to dissolve, and Zuidema, as president, was in sole control of Worth, well knowing at the time of the merger the obligation of the defendant corporation was still outstanding. The merger and the conduct of Zuidema, as president, was to misappropriate the properties of Worth whereby the security of the plaintiff would be impaired. The plaintiff made demands on Worth and to Zuidema for payment of the balance due, and they failed and refused to pay to the damage of the plaintiff. He had no adequate remedy at law.

In Count II the plaintiff re-alleged Count I and states, in addition, that on or about September 20, 1967, an agreement was entered into between Zuidema and Rueter, officers of Rueter-Worth, whereby Zuidema sold and transferred 136 shares of common stock to Rueter-Worth. Zuidema, knowing of the existing obligations to the plaintiff, pursuant to the agreement did in fact pay Rueter-Worth the sum of $16,000, which amount approximated the unpaid balance due and owing to the plaintiff. This amount was deposited with the company for the express use and benefit of the plaintiff which the company and Fred J. Rueter expressly assumed. The unpaid balance owing to the plaintiff was reduced to $12,022.86 as of September 14, 1968, and no part of the balance had been paid. Rueter-Worth had been totally liquidated without any notice of liquidation to the plaintiff. That by such act of the company and its principal officer, Fred J. Rueter, the security of the

plaintiff had been impaired. The agreement of September 20, 1967, created a trust of the sum of $16,000, which was to have been set aside and preserved for the payment of plaintiff's claim. By the act of liquidation of the company by Fred Rueter, the failure to give plaintiff notice severely impaired the security of the plaintiff's claim. At the time of the merger it was represented to the plaintiff by the defendants that 50 shares of common stock of Rueter-Worth Dairy Company would be transferred over to the plaintiff as collateral security on the plaintiff's returning the 25 shares of Worth Dairy, Inc., common stock held as collateral security. The plaintiff turned over the 25 shares but never received the 50 shares as represented by the defendants. Subsequently, the plaintiff's 25 shares of stock held by him were returned to him. The representation of the defendants concerning the transfer of the 50 shares as collateral security was a false representation relied upon by the plaintiff.

In this court, the plaintiff contends that Zuidema violated sections 61, 62, 63 and 64 of the Business Corporation Act which contain the procedures to be followed in merging corporations. (Ill. Rev. Stat. 1969, ch. 32, pars. 157.61—157.64.) Section 63 provides in part for the notice to shareholders of the plan for merger, and section 64 provides for the meeting of shareholders to vote on the proposed plan. The linchpin of the plaintiff's argument is his assertion that as a creditor he had the right to vote on any proposed merger plan. He had no such right. Section 30 of the Act (ch. 32, par. 157.30) provides that "a shareholder whose shares are pledged shall be entitled to vote such shares until the shares have been transferred into the name of the pledgee, and thereafter the pledgee shall be entitled to vote the shares so transferred." The pleadings make it clear that at no time were the shares ever transferred into the name of Polivka.

The plaintiff relies on *Green v. Hedenberg*, 159 Ill. 489, 42 N.E. 851. In that case the court upheld the judgment against officers and directors of a corporation for misappropriation of corporate funds. The court noted that the complainant "was only a stockholder by reason of his holding the 750 shares of stock as collateral security." That case, however, does not say that a pledgee has the right to vote on any corporate matters. It is not authority for the right of a holder of stock as collateral security to maintain an action based on a violation of section 63 of the Act.

■■ The complaint also alleges Polivka relied on Zuidema's representation that he would get 50 shares of the new corporation as security. The plaintiff, we gather, seeks to allege fraud against Zuidema; and we conclude that he has not done so. Fraud must include a statement of a material fact, it must be false and known by the party making it to

be false (*Roth v. Roth*, 45 Ill.2d 19, 23, 256 N.E.2d 838, 840); and the false representation must be one of an existing or past fact, and not a mere promise to do some act in the future. (*Tonchen v. All-Steel Equipment Co.*, 13 Ill.App.3d 454, 463-4, 300 N.E.2d 616; *Metropolitan Sanitary District v. Pontarelli & Sons, Inc.*, 7 Ill.App.3d 829, 841, 288 N.E.2d 905; ILP *Fraud* § 36, n. 34.) There is no allegation that Zuidema knew that the representation was false at the time he made it; and the statement of Zuidema, at best, may be construed as a promise to do something in the future and is not a representation of an existing or past fact.

■■ The complaint alleges that the conduct of Zuidema in participating in the merger was to "misappropriate" the property of Worth. No fact, other than his participation in the merger procedure, is alleged against Zuidema to support the bald conclusion that he misappropriated the funds of Worth. It is, in our view, insufficient.

■■ If the complaint is to be construed as a claim against Zuidema as an officer for the debt of the corporation, it must fall as a matter of law. It is the general rule that directors or other officers of corporations are not liable for debts contracted in the name of and on behalf of the corporation and which are binding upon it unless they are expressly made liable by statute, or unless they also contract in their own behalf. (Fletcher, Cyclopedia Corporation, vol. III, ch. 11, § 1193, at 905.) In *Vulcan Corp. v. Cobden Machine Works*, 336 Ill.App. 394, 401, 84 N.E. 2d 173, the court held that in determining whether an officer has contracted in his own behalf the courts will apply the general rules of agency:

> "The liability of an agent of a corporation purporting to act for it is no different from that of any other agent, and the rule is:
> 'An unauthorized agent purporting to enter into a contract for a principal is personally liable to the other contracting party.' 3 CJS, Agency, § 208."

See also *Rockhold v. O'Brien*, 312 Ill.App. 601, 38 N.E.2d 819.

Nowhere in the complaint is it alleged that Zuidema contracted in his own behalf, that he was without authority or that he exceeded his authority as agent for the corporation; and by the terms of the agreement as embodied in the direction to Orland State Bank and the collateral assignment, which were made part of the complaint, it is clear that Polivka was contracting with Worth Dairy Company through Zuidema as president of Worth Dairy and that the obligation was that of Worth Dairy.

■■ For these reasons we conclude that the complaint failed to state a cause of action against Zuidema and his motion to strike and dismiss should have been allowed.

At trial, only Polivka and Zuidema were called by the plaintiff. In addition to proving the allegations of the complaint, which included the fact that Polivka was told he would get 50 shares in the new corporation as security, the evidence established that the plaintiff knew that his payments were being made by Rueter-Worth and that the debt was reduced from over $26,000 to $12,000 by Rueter-Worth. The plaintiff, however, testified that he did not know the companies had merged. After he failed to receive his monthly payments, he contacted the Orland Park Bank. Later, in August or September, he drove out to the dairy and found a sign on the door indicating that the corporation was being liquidated. He was not sure of the year but thought it was after 1968. He never filed a claim with the liquidator.

After Worth purchased the 25 shares from Polivka, Zuidema owned 75 shares and the corporation 25. As a result of the merger, Zuidema became 50-percent owner and vice-president of the new corporation and Fred Rueter was the president. At the time of the merger Worth was solvent. In September, 1967, Zuidema severed his relationship with the company because he was unhappy with the operations. He turned in his 136 shares and borrowed $40,000 from Orland Park Bank to buy back the real estate that had formerly been owned by Worth. Rueter-Worth owed him about $45,000. He also paid the corporation $16,000 representing the balance due on the loan from Polivka. He learned that Rueter-Worth was going out of business from his brother-in-law. Zuidema's name was on the list of creditors, and he purchased the business at the public auction sale for $200,000. He paid $17,000 in cash and assumed the mortgage of $183,000 held by Orland Park Bank.

■■ We judge that this evidence fails to show any facts which would support a claim for misappropriation, fraud, or breach of contract or of any statutory duty; and the trial judge correctly ruled in favor of the defendant Zuidema at the close of the plaintiff's case.

Rueter filed his petition to vacate on April 2, 1973, 26 days after the entry of the judgment alleging that he had not been served with summons. His petition was denied. On April 19, a motion to quash service of summons was filed and a hearing held. The defendant, Fred J. Rueter, testified that he lived at 11916 Timber Lane in Palos Park, with his wife, Helen, and daughter, Elaine, during 1970. No one by the name of G. Rueter lived with him or was employed by the corporation. He was never served with summons or a copy of the complaint. Rueter-Worth Dairy Company had ceased to operate as a business in 1968.

The back of the complaint shows: "Serve the following defendants: * * * Fred Rueter, individually and Rueter-Worth Dairy Company, 11916 Timberlane, Palos Park, Illinois." The return of the deputy sheriff

shows that on June 5, 1970, he served Fred Rueter personally and Rueter-Worth Dairy Company by leaving a copy of the papers with G. Rueter. ██ A sheriff's return is prima facie proof of service which can be overcome only by clear and convincing proof. (*Robinwoods West, Inc. v. Kramer*, 128 Ill.App.2d 49, 262 N.E.2d 332.) The courts are required to indulge every presumption in favor of the sheriff's return. (*Pyle v. Groth*, 15 Ill.App.2d 361, 146 N.E.2d 219.) In *Marnik v. Cusack*, 317 Ill. 362, 364, 148 N.E. 42, 43 the defendant testified that the summons was not served on him and that he knew nothing of the suit until after the term in which the judgment was rendered. The return of the summons was made by the deputy sheriff whose duty it was to serve writs in the district in which the defendant lived. When first called nearly 2 years after the date of service, the deputy testified that while he made the return he did not remember serving the writ. On cross-examination he said that he did not serve it himself but that he remembered giving it to another deputy. He further testified that he was pretty sure he gave it to the other deputy and that officers many times give writs to one another to serve, and the man in whose territory it is signs the return. The other deputy testified that he never served anybody on the street on which the defendant lived. He remembered that the first deputy gave him the summons which he served but he did not know whether it was the summons in controversy or not. He did not sign the return, and his handwriting was not on it. The first deputy was recalled and stated that he did not remember whether he served the writ or not; that he believed he served it; that the memorandum on the summons was in his handwriting; that he had no independent recollection of the writ; that his record showed that he served a summons on a man with the same name as the defendant; that he was not testifying from his memory from the records and had absolutely no recollection upon whom he served the writ. The court said:

> "The stability of judicial proceedings, however, requires that the return of an officer made in the due course of his official duty and under the sanction of his official oath should not be set aside merely upon the *uncorroborated testimony* of the person on whom the process has been served but only upon clear and satisfactory evidence.
>
> *    *    *
>
> The testimony of Larsen and Kruckstein [the two deputy sheriffs] amounts to nothing, either to assist or impeach the service. Neither has any recollection but both rely upon their written memoranda. We must do the same, and the well established rule is that the return showing service cannot be overcome by the

uncorroborated testimony of the defendant. The failure of the officer making the return to remember the service is not such clear and satisfactory proof that service was not made as to impeach the return." (Emphasis added.)

We conclude that the facts in the *Marnik* case were stronger for the defendant than here since there is nothing in this case to show any uncertainty on the part of the deputy sheriff who made the return. Nonetheless, the *Marnik* court upheld the service, and we do so also here.

Our research has disclosed that in every case upholding the defendant's assertion that he was not served, the defendant's testimony was corroborated or the return was otherwise impeached: *Kochman v. O'Neill*, 202 Ill. 110, 66 N.E. 1047 (the defendant and her daughter testified); *Ford v. Continental Illinois National Bank & Trust Co.*, 18 Ill.App.3d 166, 309 N.E.2d 332 (the defendant and his lawyer testified); *Drexel Savings & Loan Ass'n v. McCall*, 107 Ill.App.2d 30, 245 N.E.2d 900 (34 affidavits and testimony of other witnesses); *Abron v. Public Pontiac, Inc.*, 64 Ill.App.2d 73, 212 N.E.2d 326 (the court said the deputy sheriff's testimony "tends to impeach the return of service." There was independent evidence of lack of authority of the agents to accept summons); *Isaacs v. Shoreland Hotel*, 40 Ill.App.2d 108, 188 N.E.2d 776 (affidavits from six employees of the defendant. Deputy sheriff contradicted own return). In *Keel v. Kostka*, 106 Ill.App.2d 172, 245 N.E.2d 607, cited by the defendant, the opinion does not involve the ruling of the trial court on the question of service.

The defendant also cites authority for the proposition that a petition supported by affidavits is admitted where no answer is filed. None of the cases involved the challenge to a sheriff's service. The plaintiff here, who was not in a position to admit or deny the allegations of the petition since the fact of service was not within his personal knowledge, had the right to rely on the presumption of correctness of the sheriff's return. We judge, therefore, that the trial court correctly ruled that the uncorroborated testimony of Rueter was insufficient to support the quashal of the summons. The judgments of the circuit court are affirmed.

Judgments affirmed.

BURKE and GOLDBERG, JJ., concur.

## SUPPLEMENTAL OPINION

Mr. JUSTICE EGAN delivered the opinion of the court:

■■ In his petition for rehearing, the defendant Rueter now contends that we did not pass on his assertion that the court erroneously denied his petition to vacate without a hearing. The basis of his petition to va-

cate was that "summons was never served on him." On April 2, 1973, the court granted leave to file the petition to vacate and denied it. On April 16, another attorney appeared for Rueter and asked the court for reconsideration of the order of April 2 and sought leave to file another petition to vacate. When the court informed the new attorney that there was no difference between the two petitions, the second petition was withdrawn. In the brief filed in this court the defendant said: "The trial court was under the misconception that the only way to dispute a return of service of summons of the Deputy Sheriff was by motion to quash service of summons." But 3 days after withdrawing his petition to vacate, the defendant did file a motion to quash service of summons based on the same contention of his petition to vacate; namely, that summons was never served on him. A hearing was conducted on the motion to quash service, and it is inconceivable that the evidence heard on the motion to quash was any different on this issue than would have been heard on a petition to vacate. Consequently, we fail to see how the defendant was prejudiced in any way by the format of the hearing.

He also contends that the petition to vacate was distinctly different from the motion to quash. It was in that it had other allegations, such as a meritorious defense and due diligence, but the heart of the petition to vacate was the allegation that he was not served; and he was given every opportunity to prove it.

■■ He also contends that we have "ratified a windfall profit" to Polivka. The undisputed record shows that Polivka surrendered 25 shares of stock in exchange for a promise to pay him $31,000; that Rueter received $16,000 from Zuidema representing the balance due Polivka; and that Rueter paid approximately $4,000, not $16,000, from the sum he received from Zuidema. The judgment here represents what was owed to Polivka and can hardly be considered a "windfall profit."

For these reasons we adhere to our original opinion. The petition for rehearing is denied.

BURKE, P. J., and GOLDBERG, J., concur.